**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RYAN BUNDY<br>Bunkerville, NV<br><br>                Plaintiff,<br>v.<br><br>JEFF SESSIONS<br>950 Pennsylvania Ave NW<br>Washington, DC, 20006<br><br>       And<br><br>ERIC HOLDER<br>c/o 950 Pennsylvania Ave NW<br>Washington, DC, 20006<br><br>       And<br><br>LORETTA LYNCH<br>c/o 950 Pennsylvania Ave NW<br>Washington, DC, 20006<br><br>       And<br><br>JAMES COMEY<br>c/o 935 Pennsylvania Ave NW<br>Washington, DC, 20006<br><br>       And<br><br>NEIL KORNZE<br>c/o 1849 C Street NW, #5665<br>Washington, DC 20240<br><br>           Defendants. | **COMPLAINT** |

## I.  INTRODUCTION

Plaintiff Ryan Bundy ("Ryan" or "Plaintiff") brings this action against Attorney General

Jeff Sessions ("Sessions"), former Attorney General Loretta Lynch ("Lynch"), former Attorney

General Eric Holder ("Holder"), former Bureau of Land Management ("BLM") Director Neil Kornze ("Kornze"), and former Director of the Federal Bureau of Investigation ("FBI") James Comey ("Comey") in their individual capacities for violations of his constitutional rights under *Bivens* v. *Six Unknown Named Agents*, 403 U.S. 388 (1971) ("*Bivens*"), 42 U.S.C. § 1983 violations, as well as the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb.

## II.    JURISDICTION AND VENUE

1.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction).

2.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 (Diversity Jurisdiction) as this case and controversy exceeds $75,000 Dollars.

3.    This Court has supplemental jurisdiction over this case pursuant to 28 U.S.C. § 1367.

4.    Venue is proper pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391(b)(2), (3) a substantial part of the events or omissions giving rise to the claims occurred in this judicial district and Defendants are subject to personal jurisdiction in this District.

## III.    PARTIES AND STANDING

5.    Plaintiff Ryan Bundy is a natural man, who at all times was and is a Nevada State nations, who lives upon the land known as Nevada.

6.    Ryan has standing to bring this action because he has been directly affected, harmed, and victimized by the unlawful and unconstitutional conduct complained herein. His injuries are directly and proximately related to the conduct of Defendants, each and every one of them, jointly and severally, acting in concert.

7.      Defendant Jeff Sessions is the Attorney General of the United States, the head of the Department of Justice, which is headquartered in Washington, D.C. He is being sued in his individual capacity.

8.      Defendant Loretta Lynch is a former Attorney General of the United States, the head of the Department of Justice, which is headquartered in Washington, D.C. She is being sued in her individual capacity.

9.      Defendant Eric Holder is a former Attorney General of the United States, the head of the Department of Justice, which is headquartered in Washington, D.C. He is being sued in his individual capacity.

10.     Defendant Neil Kornze is a former Director of the Bureau of Land Management ("BLM"). He is being sued in his individual capacity.

11.     Defendant James Comey is a former Director of the Federal Bureau of Investigation ("FBI"). He is being sued in his individual capacity.

## IV.    FACTS

12.     Defendants, each and every one of them, as principals of national agencies headquartered in Washington, D.C., have conspired as an enterprise to deprive Ryan of his constitutional rights.

11.     Defendants, each and every one of them, instituted, ordered, commanded, and/or ratified the conduct alleged herein from the District of Columbia.

12.     Defendants, acting in concert, directed and ordered local Nevada state officials, including the Sheriff of Clark County to violate Ryan's constitutional rights.

13.     The acts and practices alleged herein are part of a pattern of continuing illegal and unconstitutional conduct up to the present and are part of the same continuous scheme and enterprise, most recently furthered and carried out by Defendant Sessions.

14.     Ryan is a man who has ranched on a plot of land owned by his family in Bunkerville, Nevada (the "Bundy Ranch") that his ancestors have ranched on for about 141 years.

15.     Under the guise of collecting grazing fees, an alleged and unverified debt, the federal government – BLM and FBI – upon orders from Defendants Comey, Kornze and Holder from Washington D.C. in this district, invaded the Bundy Ranch in April of 2014 and violently assaulted and extorted Ryan and his family members and killed his family's cattle.

16.     Defendant SSA Dan Love ("Love") was the BLM agent in charge of the Standoff.

17.     During the Standoff, Ryan only kept and bore a side-arm pursuant to his Second Amendment Rights. Neither Ryan nor his supporters harmed or threatened any federal or state agents.

18.     Ryan was subsequently indicted in February 2016 on orders from Defendant Lynch in Washington D.C. on charges stemming from his stand to defend his and his family's rights, and was forced to spend nearly two years unlawfully incarcerated and held without bail in violation of the Eighth Amendment and The Bail Reform Act of 1966, suffering cruel and unusual punishments with no determination of guilt until charges against Plaintiff were dismissed with prejudice in January 2018.

19.     Ryan was subjected to malicious prosecution as retaliation for his exercise of his First and Second Amendment rights while protecting his private property and other rights direct and proximate to the Bundy Ranch.

20.     In this regard, Ryan was indicted in 2016 by the U.S. Department of Justice, under the leadership of Defendant Lynch, following a not too thinly-veiled threat by former President Barack Obama ("Obama") against Ryan's father, Cliven Bundy, and his family at the 2014 White House Correspondents' Association Dinner, saying "I haven't seen anybody pull a 180 that fast since Rand Paul disinvited that Nevada rancher to this dinner . . . Let me tell you something I know about the Negro . . . You don't need to hear the rest of it." Neither Ryan nor anyone in his family, including Cliven Bundy, are anti-African American.

21.     Plaintiff was subject to stereotyping and subsequent prosecution by Defendants in retaliation for their exercise of his Faith and membership in the Church of Jesus Christ of Latter Day Saints, as federal agents involved in the Standoff and the aftermath have exhibited a deep animus against members of the Church of Jesus Christ of Latter Day Saints, as set forth herein below.

22.     By subjecting Plaintiff to criminal prosecution because of his faith and membership in the Church of Jesus Christ of Latter Day Saints, the exercise of his faith has been substantially burdened.

23.     By facing criminal prosecution, Ryan was forced, against his will, to violate his deeply held religious beliefs and convictions, until such time he refused to further do so, which increased the cruel and unusual punishments that were heaped upon him in the form of solitary confinement, depriving him of rights of due process, causing physical injury, and many other violations.

24.     Defendant Kornze served as the Director of the BLM from 2013 until 2017, which is headquartered in Washington D.C. in this district. Defendant Kornze had previously

worked as a top aide to former Nevada Senator Harry Reid ("Sen. Reid"), who recommended Kornze to his position; former President Obama subsequently appointed Kornze.

25.     Defendant Kornze directly and personally used his agency, from Washington D.C. in this district, to violate the constitutional and other rights of Ryan.

26.     Defendant Comey served as Director of the FBI, which is headquartered in Washington D.C. in this district, from September 4, 2013 until May 9, 2017.

27.     Defendant Comey directly, willfully, and personally used his agency, from Washington D.C. in this district, to violate the constitutional and other rights of Ryan.

28.     Defendants, from Washington D.C. and this district, ordered, commanded, and directed, and/or ratified the assault on the Bundy Ranch, where federal agents threatened the lives of the Ryan and his family, assaulted Ryan's aunt, tased one of his brothers, violently threw another of his brothers to the ground and ground his face into the dirt, killed his bulls and concealed them in a mass, secret grave.

### Facts Pertaining to the Excessive Force and Illegal Seizure During the Standoff

29.     In April 2014, agents from BLM and the FBI, acting at the directions and orders of Defendants Comey, Kornze, and Holder invaded the Bundy Ranch in force under the guise of collecting an unverified alleged against Plaintiff Cliven and his family (the "Standoff").

30.     During the Standoff and the time leading up to it, Ryan's brother Ammon was violently tased by unnamed federal agents to be named in discovery after the same federal agents ordered and sicced vicious attack dogs on him. This incident was caught on camera.

31.     Ammon at no point threatened or harmed any federal agents.

32.     During the Standoff and at the time leading up to it, Ryan's aunt, Margaret Houston, who was fifty-seven (57) years old at the time, was also violently assaulted and thrown

to the ground by an unnamed federal agent to be uncovered and named in discovery for no reason other than her physical presence at the protest.

33.     During the Standoff and at the time leading up to it, unnamed federal agents killed tens of cattle that belonged to Ryan and his family and concealed them in secret mass graves, including bulls that are vital for procreation and therefore essential to Ryan's and the family's livelihoods.

34.     The unlawful and violent attacks of the federal government upon Ryan, his family, and their private property made its way into the national media, and people seeing how they were being treated, assembled from across America to the Bundy Ranch, with some arriving armed for self-defense and protection of the Bundy family.

35.     There, the BLM, supported by the FBI, violated Ryan's rights on his private property, to peacefully protest the violations of the First Amendment, relegating them to a fenced off compound known as a "First Amendment zone."

36.     As the Defendants escalated their attacks, the People, who had come to Plaintiff's aide, had guns pointed at them by federal agents, under the control of the FBI and the BLM. Plaintiff himself never took up arms

37.     During the Standoff, protestors assembled on a portion of Interstate 15 when the Federal Defendants threatened to retaliate using deadly force, tear gas and other means to subdue the People protesting. The protestors had heavily equipped federal agents armed with sniper rifles and other firearms pointed directly at them.

38.     In self-defense, and in defense of the people assembled, some protestors took up arms to ensure that those who were protesting peacefully, including Ryan, would not be slaughtered by the federal agents acting at the directions and orders of Defendants Comey,

Kornze, and Holder, who had overseen and directed the federal agents who threatened the lives of the Bundys.

39.    Ryan's father, Cliven Bundy, specifically called upon and required Sheriffs Gillespie and Lombardo and the Clark County Sheriff's Department (the "State Actors") to protect him, Ryan, the Bundy family, and the peaceful protesters who came to the Bundys' defense, as the land lies within the lawful and geographic jurisdiction of Clark Country of the State of Nevada, and under the lawful jurisdiction of the Clark County Sheriff's Department.

40.    The State Actors failed to provide the requested protection because they were, acting in concert at all material times, as part of a conspiracy with, and at the direction and orders of Defendants in this district, to scheme to seize control of the land, remove Ryan's cattle and destroy his and his family's life, liberty, property and livelihoods.

41.    Subsequently, Ryan and his family made other demands on the State Actors to protect them, which similarly were ignored. As a result, the Defendants, from this district and acting in concert with the State Actors, dispatched snipers to surround Ryan's home, and installed surveillance cameras on Ryan's property unlawfully and without the consent of Ryan and his family.

42.    In concert with the State Actors, federal agents acting at the direction of and on orders from Defendants in this district, threatened the lives of Ryan and his family, assaulting Ryan's aunt, tasing one of his brothers, violently throwing another of his brothers to the ground and grinding his face into the dirt, killing his bulls and concealing them in a mass, secret grave, as set forth in detail below.

43.     These acts could not have occurred had not the State Actors conspired with and at the direction and orders of the Defendants acted to seize the Bundy Ranch, Ryan's cattle and drive Ryan and his family off of the land.

### Facts Pertaining to the Whistleblower Report

44.     On November 27, 2017, an honorable BLM employee, Larry Wooten ("Wooten") sent out a whistleblower memorandum (the "Whistleblower Report") detailing far-reaching misconduct by the Defendants targeting Ryan, the rest of his family, and his supporters.

45.     Wooten had previously served as the lead case agent and investigator for the BLM, and had been tasked with investigating the Standoff at the Bundy Ranch.

46.     The Whistleblower Report sets forth numerous revelations directly relevant to this Complaint, including but not limited to:

a.      The investigation into the Standoff revealed "excessive use of force, civil rights and policy violations";

b.      BLM supervisory agents repeatedly stereotyped, mocked, slandered and degraded Ryan, Cliven, the Bundy family, and the peaceful supporters in an "amateurish carnival atmosphere" that displayed "clear prejudice" against the Bundys personally and their deeply held Latter Day Saint faith;

c.      A clear animus and prejudice against the Latter Day Saint faith, to the point at which Wooten himself was asked on two separate occasions, "you're not a Mormon are you?"

d.      Federal agents called Cliven and Ryan, his family, and his supporters derogatory vile terms and names, including "retards," "rednecks," "tractor-face," and "inbred."

e.      Federal agents bragging about roughing up Ryan's brother Dave Bundy and violently grinding his face into the ground such that he had bits of gravel stuck in his face;

f.      BLM agents refused to turn over required discovery and exculpatory evidence to the U. S. Department of Justice that was relevant to prove the innocence of those indicted as a result of the Standoff;

g.      Top agents "instigat[ing]" the monitoring of jail phone calls between the Ryan and his wife and the rest of the Bundy family;

h.      Love intentionally and willfully ignored direction from the U.S. Attorney's Office and his superiors "in order to command the most intrusive, oppressive, large scale and militaristic trespass cattle impound possible"

i.      Love telling his fellow agents to "go out there and kick Cliven, Ryan and others in the Bundy family in the mouth (or teeth) and take their cattle" and "I need you to get the troops fired up to go get those cows and not take crap from anyone";

j.      Love having a "Kill Book" as a trophy where he "bragged about getting three individuals, such as Ryan Bundy, in Utah to commit suicide" as well as having a "kill list for the Bundys;

k.      During the raid on the Bundy Ranch, BLM agents were caught on tape stating "pretty much a shoot first, ask questions later" and "shoot [the Bundys'] fucking dog first."

l.      The presence of a secure command post at FBI headquarters in Las Vegas of an "Arrest Tracking Wall" where photos of Ryan's and his family members and co-defendant Eric Parker were marked with an "X" over them, as if to indicate that they had already been killed or will be killed soon.

47.      Wooten shared his fears with his supervisors at BLM, but after sharing these startling and revelations, Wooten was taken off the Bundy investigation and reassigned.

## Facts Pertaining to Prosecutorial Misconduct

48.     Even before Ryan was indicted, it was abundantly clear that there were no facts to support the litany of charges brought against Ryan, particularly given that they had not harmed or threatened any federal agents before, during, or after the Standoff.

49.     Defendant Holder was the Attorney General at the time that the Standoff occurred.

50.     Defendant Lynch was the Attorney General at the time that Ryan was indicted, and she personally caused and instituted the indictment of Ryan without any probable cause, from Washington D.C. in this district, as the acting Attorney General at the time.

51.     Defendant Sessions is the current Attorney General and he has ratified and condoned the prosecutorial and unconstitutional misconduct set forth herein, particularly since he authorized from this district the filing of a frivolous notice of appeal to appeal the ultimate dismissal of the supersedes indictment against Ryan, his brothers and certain other defendants.

52.     The prosecution was clearly initiated against Ryan under the direction of Lynch as a punishment and/or retaliation for exercising his First and Second Amendment rights as well as his Latter-Day Saint faith.

53.     Pursuant to this, at Lynch's direction the prosecuting attorneys at the Office of the U.S Attorney for the District of Nevada engaged in a pattern and practice of bad faith and flagrant, gross prosecutorial misconduct, and later also under the direction of Defendants Lynch and Sessions, calculated to deprive Ryan of his constitutional, statutory, and other rights to make it easier to obtain a conviction.

54.     As a result, on November 6, 2017 counsel for Cliven Bundy in the *Bundy Prosecution* filed an Emergency Motion to Dismiss for Discovery Misconduct.

55.     As set forth in the aforesaid Motion, "[d]uring the testimony of witness Mary Hinson, it was revealed that a 'live video feed' depicting the Bundy home, and ingress and egress from the home, was being piped into the BLM 'Command Center' during the events in question…The existence of this video surveillance has never been disclosed to the defense. No copy of the video has been produced pursuant to the government's affirmative duty to disclose relevant and material evidence to the defense . . . The defense first learned of the actual existence of such facts and evidence on November 3, 2016, *after* trial had already begun."

56.     Furthermore, on December 11, 2017 in the *Bundy* Prosecution, the presiding judge, the Honorable Gloria Navarro ("Judge Navarro") read – in open court on the record – "a lengthy list of documents previously undisclosed by prosecutors that could be used to impeach government witnesses or otherwise bolster defense attorney's arguments that their clients felt surrounded by government snipers prior to the standoff."

57.     As reported by John Smith for Reuters, "some of the prosecution's documents were produced so late that they violated federal evidence discovery rules . . . and as a result could lead [Judge Navarro] to strike witness testimony, call for a continuance, or order a mistrial."

58.     The willful and flagrant bad faith and misconduct by the prosecuting attorneys, acting at the direction of and on orders from Defendants in this district, was so egregious that even Judge Navarro, who had throughout the course of the prosecution exhibited conduct that by and reasonable view indicated her own deep-seated prejudice in favor of the prosecution, had no choice but to dismiss the charges against Ryan with prejudice.

59.     In dismissing the charges against Ryan, even Judge Navarro lambasted the conduct of the prosecuting attorneys and their agency witnesses who had lied under oath or in

argument to the Court, saying that they were guilty of "flagrant misconduct" and characterizing their conduct as "outrageous." Judge Navarro held that dismissal with prejudice was the only sufficient remedy given the extreme scope of the misconduct and bad faith committed.

60.     At the January 8, 2018 hearing, the Court also conclusively determined that the prosecution team had "willfully failed to disclose potentially exculpatory, favorable, and material information . . ." in clear violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.

61.     The Court also pointed out, "[i]t seems no coincidence that most, if not all, of these documents are authored by the FBI . . ."

62.     Defendant Sessions ratified all of this illegal and unconstitutional conduct by willfully failing and refusing to supervise his agents and also by ordering the filing of a frivolous notice of appeal appealing Judge Navarro's dismissal.

63.     The decision to appeal Judge Navarro's order could only have come directly from Defendant Sessions' in this district in Washington D.C., given the extremely high-profile nature of this prosecution.

## FIRST CAUSE OF ACTION
### *Bivens – Violation of Fourth Amendment Illegal Search and Seizure*
### *Defendants Comey and Kornze*

64.     Ryan repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and affect, as if fully set forth herein again at length.

65.     The Fourth Amendment provides, in pertinent part, that individuals have the right to be free from illegal and unreasonable searches and seizures.

66.     Acting under the color of office as part of the conspiracy plead above, Defendants Comey and Kornze, from this district, ordered Defendant Love and other federal agents to intentionally conduct an illegal and unreasonable search and seizure of Ryan's property.

67.     As set forth in the Whistleblower Report, it was the clear and deliberate intent of Defendant Love – the SSA in charge of the raid on the Bundy Ranch – to "command the most intrusive, oppressive, large scale and militaristic trespass cattle impound possible."

68.     During the Standoff, Love and unknown federal agents brutally slaughtered tens of heads of cattle, including numerous bulls that are necessary in order for a ranching operation such as the Bundys' to continue.

69.     Defendants Comey and Kornze, as part of a conspiracy as plead above, were acting under the color of law when they violated Ryan's rights under the Fourth Amendment to the Constitution.

## SECOND CAUSE OF ACTION
### Bivens – First Amendment Retaliation
### All Defendants

70.     Ryan repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and affect, as if fully set forth herein again at length.

71.     Ryan engaged in constitutionally protected speech and/or activity by (1) protesting the raid on the Bundy Ranch by federal agents and (2) exercising his Latter Day Saint faith consistent with his right under the First Amendment to the Constitution to protest government action or interference.

72.     Ryan did not harm, threaten, or pose any threat to any federal or state agent while exercising his First Amendment rights.

73.     As a direct and proximate result of Ryan's decision to exercise his constitutionally protected First Amendment rights, Ryan was (1) needlessly, unsuccessfully and unlawfully provoked, (2) placed in fear of his life, (3) arrested without warrant, (4) incarcerated without due process and equal protection under the Constitution, much less an Act of Congress, (5) held

without bail and, (6) subjected to malicious and retaliatory prosecution without probable cause or just reason.

74.     Ryan's arrest and subsequent prosecution without probable cause or just reason chilled Ryan from continuing to exercise his First Amendment rights.

75.     Defendants formed a retaliatory motive and arrested Ryan because he was exercising his First Amendment rights.

76.     Defendants' retaliatory motive and deep personal animus for Ryan are set forth above and in the Whistleblower Report.

77.     Defendants from this district possessed and implemented a retaliatory motive and ordered and induced the prosecuting attorneys to prosecute Ryan without probable cause or just reason, because Ryan was exercising his First Amendment rights.

### THIRD CAUSE OF ACTION
*Violation of Religious Freedom Restoration Act*
*Against All Defendants*
**42 U.S.C. 2000bb-1**

78.     Ryan repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and affect, as if fully set forth herein again at length.

79.     Defendants, each and every one of them acting in concert and as part of the conspiracy plead above, displayed an open bias, prejudice and animus against Ryan's Latter Day Saint faith, as detailed above and in the Whistleblower Report.

80.     Defendants, each and every one of them acting in concert and as part of the conspiracy plead above, substantially burdened Ryan's exercise of his Latter Day Saint faith by subjecting him to unwarranted arrest, incarceration, and prosecution without probable cause or just reason because of his Latter Day Saint faith.

81.     As a result of the arrests and prosecutions without probable cause or just reason, Ryan was forced to modify his behaviors and violate his Latter Day Saint faith against his will, particularly while he was incarcerated in federal prison.

82.     There was no compelling government interest furthered by Defendants' actions.

**FOURTH CAUSE OF ACTION**
*Civil Action for Deprivation of Rights*
*Against Defendants Comey and Kornze*
**42 U.S.C. § 1983 – Excessive Force in Violation of the Fourth and Fourteenth Amendment**

83.     Ryan repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and affect, as if fully set forth herein again at length.

84.     42 U.S.C. § 1983 provides in pertinent part that:

Every person, who under color of any statute, ordinance, regulation, custom or usage of any state or territory or the District of Columbia subjects or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the constitution and law shall be liable to the party injured in an action at law, suit in equity, or other appropriate proceeding for redress . . .

85.     Ryan in this action is a Nevada National within the geographic boundaries of The United States of America and Defendants Comey, Kornze, are persons for purposes of 42 U.S.C. § 1983.

86.     State Actors Doug Gillespie and Joe Lombardo, as part of the above plead conspiracy, named in this claim, at all relevant times hereto, and as law enforcement officers under the laws of the state of Nevada were acting under the color of state law in their capacity as Sheriffs in Clark County; they further acted in conjunction with and at the direction of and the orders of Defendants Comey and Kornze, who were acting in their individual capacities.

87. At the time of the events complained herein, Ryan possessed the clearly established right under the Fourth and Fourteenth Amendments to the Constitution to be secure in his person, home, and property from unreasonable seizure through excessive force.

88. Ryan also possessed the clearly established right under the Fourteenth Amendment to the Constitution to bodily integrity and to be free from excessive force by law enforcement.

89. Any reasonable person knew or should have known of these rights at the time of the conduct complained herein insofar as they were clearly established at that time; especially to Defendants as sworn law enforcement officers.

90. Defendants Comey and Kornze's actions and use of force, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Ryan's federally protected rights. The force—which each and every Individual Defendant ratified by action, conspiracy, collaboration, or in concert with each one—used by the State Actor sheriffs shocks the conscience and violated these Fourteenth Amendment rights of Ryan as well.

91. The State Actors, at the direction of Comey and Kornze, unlawfully seized Ryan by means of objectively unreasonable, excessive and physical force that shocks the conscience, thereby unreasonably restraining and depriving Ryan of his freedom.

92. The State Actors, at the direction of Comey and Kornze, engaged in the conduct described by this Complaint willfully, maliciously, in bad faith, and in reckless disregard of Ryan's federally protected constitutional rights.

93. The State Actors, at the direction of Comey and Kornze, did so with shocking and willful indifference to Ryan's rights, and in so doing exhibited conscious awareness that they would cause Ryan severe physical and emotional injuries.

94.     The acts or omissions of all State Actors, at the direction of Comey and Kornze, were moving forces behind Ryan's injuries.

95.     The acts of omissions of the State Actors, at the direction of Comey and Kornze, as described herein intentionally deprived Ryan of his constitutional rights and caused him other damages.

96.     The State Actors, at the direction of Comey and Kornze, at all times relevant hereto were acting pursuant to municipal/county custom, policy, decision, ordinance, regulation, widespread habit, usage, or practice in their actions pertaining to Ryan.

97.     As a proximate result of this unlawful conduct, Ryan has suffered actual and physical and emotional injuries, and other damages and losses entitling him to compensatory and special damages, in amounts to be determined at trial.

**FIFTH CAUSE OF ACTION**
*Civil Action for Deprivation of Rights*
*Against All Defendants*
**42 U.S.C. § 1983 – Retaliation in Violation of the First Amendment**

98.     Ryan repeats and re-alleges all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

99.     Ryan engaged in protected speech and/or activity by (1) protesting the raid on the Bundy Ranch by federal agents and (2) exercising his Latter Day Saint faith.

100.     Ryan did not harm or threaten, nor did he pose any threat to any federal or state agent while exercising his First Amendment rights.

101.     As a direct and proximate result of Ryan's decision to exercise his First Amendment rights, Ryan was (1) arrested, (2) incarcerated, and (3) subjected to prosecution without probable cause or just reason.

102.    Ryan's arrest and subsequent prosecution without probable cause or just reason chilled Ryan from continuing to exercise his First Amendment rights.

103.    The State Actors, at the direction of Defendants, possessed a retaliatory motive and arrested Ryan because he was exercising his First Amendment rights.

104.    The State Actors, under the color of state law, at the direction and on orders of Defendants who were acting in their individual capacities, possessed a retaliatory motive and induced the prosecuting attorneys to prosecute Ryan, without probable cause or just reason, because Ryan was exercising his First Amendment rights.

105.    As a proximate result of this unlawful conduct, Ryan has suffered actual and physical and emotional injuries, and other damages and losses entitling him to compensatory and special damages, in amounts to be determined at trial.

### SIXTH CAUSE OF ACTION
#### *Civil Action for Deprivation of Rights*
#### *Against All Defendants*
### 42 U.S.C. § 1983 – Malicious Prosecution in Violation of the Fourth Amendment

106.    Ryan repeats and re-allege all of the previous allegations of the entirety of this Complaint with the same force and effect, as if fully set forth herein again at length.

107.    At the time of the events complained herein, Ryan possessed the clearly established constitutional right to be free from malicious prosecution without probable cause under the Fourth Amendment and in violation of due process under the Fourteenth Amendment.

108.    Any reasonable person knew or should have known of these rights at the time of the complained of conduct insofar as they were clearly established at that time; especially to the State Actors as sworn law enforcement officers.

109.     The State Actors, under the color of state law, and at the direction of Defendants who were acting in their individual capacities, conspired with each and every Federal Individual Defendant and acted in concert to institute, conduct and continue a criminal proceeding.

110.     The State Actors, at the direction of Defendants, engaged in the conduct described by this Complaint willfully, deliberately, maliciously, in bad faith, and in reckless disregard of Ryan's federally protected constitutional rights.

111.     The prosecution against Ryan for allegations known to be false were malicious, shocking, and objectively unreasonable in light of the circumstances.

112.     Those criminal charges terminated in Ryan's favor. Judge Navarro dismissed the supersedeas indictment and case with prejudice because of the State Actors' conduct, acting in concert with and at the direction of and on orders from the Defendants.

113.     The acts or omissions of the State Actors, at the direction of and on orders from the Defendants, as described herein intentionally deprived Ryan of his constitutional and statutory rights and caused other damages.

114.     As a proximate result of this unlawful conduct, Ryan has suffered actual and physical and emotional injuries, and other damages and losses entitling him to compensatory and special damages, in amounts to be determined at trial.

V.      **PRAYER FOR RELIEF**

WHEREFORE, Ryan Bundy's pray for relief and judgment against each of the Defendants, jointly and severally, as follows:

a.      For very large actual, compensatory, punitive and other damages for which he is legally entitled in an amount in well in excess of the diversity jurisdictional threshold of $75,000,

which damages are to be determined by the jury, as well as attorneys fees and costs and such

other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

**Plaintiff demand a trial by jury on all counts as to all issues so triable.**

Dated: October 31, 2018                                        Respectfully submitted,


                                              */s/ Larry Klayman*
                                              Larry Klayman, Esq.
                                              KLAYMAN LAW GROUP, P.A.
                                              D.C. Bar No. 334581
                                              2020 Pennsylvania Ave. NW Suite 800
                                              Washington, DC 20006
                                              Tel: (310)-595-0800
                                              Email: leklayman@gmail.com


                                              */s/ Ryan Bundy*
                                              Ryan Bundy
                                              Bunkerville, Nevada
                                              Co-Counsel Sui Juris

                                              **Attorneys for Plaintiff**