# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN BUNDY**<br><br>    **Plaintiff,**<br><br>**vs.**<br><br>**JEFF SESSIONS, et al.***<br><br>    **Defendants.** | **Case No.:  1:18-CV-02520 (TNM)**<br><br>**The Honorable Trevor N. McFadden** |

## DEFENDANTS' MOTION TO DISMISS

Defendants Jefferson B. Sessions, III, Loretta Lynch, Eric Holder, James Comey, and Neil Kornze hereby file this motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Counts One through Six – which seek damages for alleged constitutional violations under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and 42 U.S.C. § 1983, as well as an alleged statutory violation under the Religious Freedom Restoration Act, 42 U.S.C. 2000bb-1 – should be dismissed for failing to state claims on which relief may be granted. The specific grounds for dismissing these claims are set forth in the accompanying memorandum of points and authorities.

A proposed order is attached.

Dated: March 28, 2019

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
Civil Division

---

* For security reasons, the caption of this filing does not contain Defendants' residential addresses.

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch
Civil Division

*s/ Siegmund F. Fuchs*
SIEGMUND F. FUCHS
(D.C. Bar # 986828)
Trial Attorney, Torts Branch
Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 616-4322 (phone)
(202) 616-4314 (fax)
siegmund.f.fuchs@usdoj.gov

Attorneys for Defendants

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN BUNDY**<br><br>                    **Plaintiff,**<br><br>**vs.**<br><br>**JEFF SESSIONS, et al.**<br><br>                    **Defendants.** | **Case No.:  1:18-CV-02520 (TNM)**<br><br>**The Honorable Trevor N. McFadden** |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch
Civil Division

*s/ Siegmund F. Fuchs*
SIEGMUND F. FUCHS
(D.C. Bar # 986828)
Trial Attorney, Torts Branch
Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station
P.O. Box 7146
Washington, D.C. 20044-7146
(202) 616-4322 (phone)
(202) 616-4314 (fax)
siegmund.f.fuchs@usdoj.gov

Attorneys for Defendants

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iv

INTRODUCTION ...................................................................................- 1 -

BACKGROUND ....................................................................................- 2 -

STANDARD OF REVIEW ....................................................................... - 6 -

ARGUMENT ........................................................................................- 6 -

I.   Defendants cannot be sued under Section 1983, which applies to state actors. ..................- 6 -

II.  The unlawful search and seizure and excessive force claims against Defendants Comey
     and Kornze are time-barred. ......................................................................... - 8 -

III. The prosecution-based claims against Attorneys General Sessions, Lynch, and Holder
     are barred by absolute immunity...................................................................... - 9 -

IV.  Defendants Comey and Kornze are entitled to qualified immunity on all claims
     because the complaint fails to allege their personal participation in any alleged wrong..- 12 -

V.   Counts Two, Five, and Six should be dismissed because special factors preclude
     recognizing a *Bivens* claim for prosecution-based claims ................................................- 16 -

     A.  Counts Two, Five, and Six raise a new context for *Bivens* purposes........................- 18 -

     B.  Special factors counsel hesitation against extending *Bivens* to wrongful prosecution-
         based claims ..............................................................................................- 19 -

VI.  Defendants are entitled to qualified immunity on all constitutional tort claims because
     the complaint fails to sufficiently allege a clearly established constitutional violation ...- 26 -

     A.  Count One against Defendants Comey and Kornze fails to allege a clearly established
         constitutional violation ..............................................................................- 28 -

     B.  Counts Two, Five, and Six against all Defendants fail to allege a clearly established
         constitutional violation ..............................................................................- 30 -

C.  Count Four against Defendants Comey and Kornze fails to allege a clearly established constitutional violation ................................................................................- 37 -

VII.  The RFRA claim fails to state a claim on which relief can be granted ............................- 40 -

A.  The RFRA claim fails on the merits...........................................................................- 40 -

B.  RFRA does not authorize personal damages suits against federal officers.................- 43 -

CONCLUSION...........................................................................................................- 45 -

# TABLE OF AUTHORITIES

Cases

*Acosta Orellana v. CropLife Int'l,*
   711 F. Supp. 2d 81 (D.D.C. 2010) ........................................................................ 14

*Albright v. Oliver,*
   510 U.S. 266 (1994) ............................................................................................ 31

*Alehegn Mehari v. Dist. of Columbia,*
   268 F. Supp. 3d 73 (D.D.C. 2017) ................................................................. 30, 31

*Anderson v. Gates,*
   20 F. Supp. 3d 114 (D.D.C. 2013) ................................................................. 12, 13

*Argueta v. ICE,*
   643 F.3d 60 (3d Cir. 2011) .................................................................................. 15

*Ashcroft v. al-Kidd,*
   563 U.S. 731 (2011) .................................................................................. 25, 27, 30

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................... passim

*Atcha v. Indiana,*
   No. 15-110, 2015 U.S. Dist. LEXIS 150853 (N.D. Ind. Nov. 6, 2015) ................... 32

*Attkisson v. Holder,*
   No. 18-1677, 2019 U.S. App. LEXIS 8505 (4th Cir. Mar. 21, 2019) ...................... 19

*Awabdy v. City of Adelanto,*
   368 F.3d 1062 (9th Cir. 2004) ............................................................................. 35

*Barham v. Ramsey,*
   434 F.3d 565 (D.C. Cir. 2006) ............................................................................. 14

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) .............................................................................................. 6

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,*
   403 U.S. 388 (1971) ...................................................................................... passim

*Blantz v. Cal. Dep't of Corr. & Rehab.*,
  727 F.3d 917 (9th Cir. 2013) ........................................................................ 13

*Boatwright v. Jacks*,
  239 F. Supp. 3d 229 (D.D.C. 2017) .............................................................. 11

*Brady v. Maryland*,
  373 U.S. 83 (1963) ........................................................................................... 5

*Brunoehler v. Tarwater*,
  743 F. App'x 740 (9th Cir. 2018) .................................................................. 18

*Brunson v. Murray*,
  843 F.3d 698 (7th Cir. 2016) ................................................................... 30, 34

*Burke v. Lappin*,
  821 F. Supp. 2d 244 (D.D.C. 2011) .......................................................... 12, 15

*Burns v. Reed*,
  500 U.S. 478 (1991) ........................................................................................ 10

*Bush v. Lucas*,
  462 U.S. 367 (1983) .................................................................................. 17, 23

*Cairns v. Cty. of El Dorado*,
  694 F. App'x 534 (9th Cir. 2017) .................................................................. 36

*Carlson v. Green*,
  446 U.S. 14 (1980) .......................................................................................... 16

*CAT Internet Servs. v. Magazines.com, Inc.*,
  No. 00-2135, 2001 U.S. Dist. LEXIS 8 (E.D. Pa. Jan. 4, 2001) ................ 32

*Cavallaro v. City of Edmondson*,
  44 F. App'x 70 (8th Cir. 2002) ...................................................................... 41

*Chavez v. Martinez*,
  538 U.S. 760 (2003) ........................................................................................ 38

*Chavez v. United States*,
  683 F.3d 1102 (9th Cir. 2012) ...................................................................... 13

*Cohen v. Univ. of Dist. of Columbia*,
  311 F. Supp. 3d 242 (D.D.C. 2018) ................................................................ 6

*Collins v. City of Colton*,
  747 F. App'x 467 (9th Cir. 2018) ........................................................................... 35

*Collins v. City of Harker Heights*,
  503 U.S. 115 (1992) ................................................................................................. 6

*Corr. Servs. Corp. v. Malesko*,
  534 U.S. 61 (2001) ................................................................................................. 16

*Cotto v. Pabon*,
  No. 07-7656, 2008 U.S. Dist. LEXIS 94564 (S.D.N.Y. Nov. 20, 2008) ........................... 35, 37

*Covad Commc'ns. Co. v. Bell Atl. Corp.*,
  407 F.3d 1220 (D.C. Cir. 2005) ................................................................................. 5

*Crawford-El v. Britton*,
  523 U.S. 574 (1985) ............................................................................................... 25

*Dains v. Maricopa Cty.*,
  No. 07-2606, 2008 U.S. Dist. LEXIS 130808 (D. Ariz. June 12, 2008) ................................... 32

*Daugherty v. Sheer*,
  891 F.3d 386 (D.C. Cir. 2018),
  *cert. denied*, No. 18-62, 2019 U.S. LEXIS 1655 (Mar. 4, 2019) ............................................. 27

*Davis v. Passman*,
  442 U.S. 228 (1979) ............................................................................................... 16

*Davis v. Scherer*,
  468 U.S. 183 (1984) ............................................................................................... 11

*Dellums v. Powell*,
  660 F.2d 802 (D.C. Cir. 1981) ................................................................................. 10

*Dial v. Kane*,
  315 F. Supp. 3d 556 (D.D.C. 2018) ........................................................................... 15

*Dietrich v. John Ascuaga's Nugget*,
  548 F.3d 892 (9th Cir. 2008) ................................................................................... 26

*Dist. of Columbia v. Carter*,
  409 U.S. 418 (1973) ........................................................................................... 31, 38

*Dist. of Columbia v. Wesby*,
138 S. Ct. 577 (2018) ............................................................................ 28, 32, 34

*Dukore v. Dist. of Columbia*,
799 F.3d 1137 (D.C. Cir. 2015) ...................................................................... 28

*Dole Food Co. v. Gutierrez*,
No. 03-9416, 2004 U.S. Dist. LEXIS 28429 (C.D. Cal. July 13, 2004) .................. 32

*EEOC v. St. Francis Xavier Parochial Sch.*,
117 F.3d 621 (D.C. Cir. 1997) ......................................................................... 6

*Employment Division v. Smith*,
494 U.S. 872 (1990) ..................................................................................... 11

*Evans v. Poskon*,
603 F.3d 362 (7th Cir. 2010) ............................................................................ 8

*Farmer v. Moritsugu*,
163 F.3d 610 (D.C. Cir. 1998) ....................................................................... 15

*Fazaga v. FBI*,
No. 12-56867, 2019 U.S. App. LEXIS 6028 (9th Cir. Feb. 28, 2019) ............... 40, 41

*Fernandors v. Dist. of Columbia*,
382 F. Supp. 2d 63 (D.D.C. 2005) ..................................................................... 9

*Fisher v. City of San Jose*,
558 F.3d 1069 (9th Cir. 2009) ......................................................................... 38

*Gerstein v. Pugh*,
420 U.S. 103 (1975) ..................................................................................... 20

*Graham v. Connor*,
490 U.S. 386 (1989) ..................................................................................... 38

\* *Gray v. Bell*,
712 F.2d 490 (D.C. Cir. 1983) .......................................................... 10, 11, 22, 26

*Halim v. Donovan*,
951 F. Supp. 2d 201 (D.D.C. 2013) ................................................................. 12

*Harbury v. Hayden*,
444 F. Supp. 2d 19 (D.D.C. 2006) ..................................................................... 7

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ................................................................................ 11

\* *Hartman v. Moore,*
    547 U.S. 250 (2006) ......................................................................... 11, 12

*Hartman v. Moore,*
    567 U.S. 901 (2012) ................................................................................ 31

*Haupt v. Dillard,*
    17 F.3d 285 (9th Cir. 1994) ................................................................... 37

*Haynesworth v. Miller,*
    820 F.2d 1245 (D.C. Cir. 1987),
    *abrogated in part by Hartman v. Moore*, 547 U.S. 250 (2006) ............... 18

*Hill v. Borough of Kutztown,*
    455 F.3d 225 (3d Cir. 2006) .................................................................. 41

\* *Imbler v. Pachtman,*
    424 U.S. 409 (1976) ......................................................................... 10, 11

*In re Grand Jury Empaneling,*
    171 F.3d 826 (3d Cir. 1999) .................................................................. 42

*Jangjoo v. Sieg,*
    319 F. Supp. 3d 207 (D.D.C. 2018) ................................... 18, 23, 24, 25

*Jiggetts v. Cipullo,*
    285 F. Supp. 3d 156 (D.D.C. 2018) ..................................................... 31

*Jones v. Hernandez,*
    No. 16-1986, 2017 U.S. Dist. LEXIS 186300 (S.D. Cal. Nov. 9, 2017) .................................. 26

*Jones v. Horne,*
    634 F.3d 588 (D.C. Cir. 2011) .............................................................. 12

*Jones v. Kirchner,*
    835 F.3d 74 (D.C. Cir. 2016) ............................................................. 8, 9

*Kaemmerling v. Lappin,*
    553 F.3d 669 (D.C. Cir. 2008) ................................................... 40, 41, 42

*Lacey v. Yates Cty.*,
   30 F. Supp. 3d 213 (W.D.N.Y. 2014) ...................................................................... 36

*Lane v. Franks*,
   573 U.S. 228 (2014) .................................................................................................. 27

*Lebron v. Rumsfeld*,
   764 F. Supp. 2d 787 (D.S.C. 2011), *aff'd by* 670 F.3d 540 (4th Cir. 2012)............................ 11

*Lewis v. City of New York*,
   591 F. App'x 21 (2d Cir. 2015)................................................................................. 36

*Lewis v. DEA*,
   777 F. Supp. 2d 151 (D.D.C. 2011) .......................................................................... 5

*Lewis v. Parker*,
   67 F. Supp. 3d 189 (D.D.C. 2014) ............................................................................ 5

*Liff v. OIG DOL*,
   881 F.3d 912 (D.C. Cir. 2018) .................................................................................. 23

*Loumiet v. United States*,
   828 F.3d 935 (D.C. Cir. 2016) .................................................................................. 8

*Mack v. Loretto*,
   839 F.3d 286 (3d Cir. 2016)...................................................................................... 43

*Malley v. Briggs*,
   475 U.S. 335 (1986).................................................................................................. 27

*Manuel v. City of Joliet*,
   137 S. Ct. 911 (2017) ............................................................................................... 31

*Messerschmidt v. Millender*,
   565 U.S. 535 (2012).................................................................................................. 30

*Minnesota v. Carter*,
   525 U.S. 83 (1998).................................................................................................... 28

*Moore v. Hartman*,
   102 F. Supp. 3d 35 (D.D.C. 2015) ........................................................................... 37

*Moore v. Hartman*,
   571 F.3d 62 (D.C. Cir. 2009) ............................................................................ 32, 34

\* *Moore v. Hartman*,
  644 F.3d 415 (D.C. Cir. 2011) ............................................................................. 31

*Moore v. Hartman*,
  704 F.3d 1003 (D.C. Cir. 2013) ........................................................................... 31

\* *Moore v. Valder*,
  65 F.3d 189 (D.C. Cir. 1995) ......................................................................... 10, 11

*Morgan v. United States*,
  60 F. App'x 180 (9th Cir. 2003) ............................................................................. 8

*Morris v. United States Sentencing Comm'n*,
  62 F. Supp. 3d 67 (D.D.C. 2014) ..................................................................... 5, 15

*Morse v. N. Coast Opps., Inc.*,
  118 F.3d 1338 (9th Cir. 1997) ............................................................................... 7

*Newman v. Cty. of Orange*,
  457 F.3d 991 (9th Cir. 2006) ......................................................................... 35, 37

*Occhipinti v. Bauer*,
  No. 13-1875, 2016 U.S. Dist. LEXIS 38766 (M.D. Pa. Mar. 23, 2016) .................................. 11

*Patel v. Bureau of Prisons*,
  125 F. Supp. 3d 44 (D.D.C. 2015) ................................................................... 12, 43

*Pearson v. Callahan*,
  555 U.S. 223 (2009) ............................................................................................ 27

*Pinkerton v. United States*,
  328 U.S. 640 (1946) ............................................................................................ 33

*Pitt v. Dist. of Columbia*,
  491 F.3d 494 (D.C. Cir. 2007) ............................................................................. 31

*Plumhoff v. Rickard*,
  572 U.S. 765 (2014) ............................................................................................ 28

*Rasul v. Myers*,
  563 F.3d 527, (D.C. Cir. 2009) ............................................................................. 11

*Raven v. Sajet*,
  334 F. Supp. 3d 22 (D.D.C. 2018) ................................................................... 25, 38

*Rehberg v. Paulk*,
  566 U.S. 356 (2012) .................................................................................. 11

*Reichle v. Howards*,
  566 U.S. 658 (2012) .................................................................................. 18

*Richardson v. Dist. of Columbia*,
  322 F. Supp. 3d 175 (D.D.C. 2018) ......................................................... 14

*Robinson v. Howard Univ., Inc.*,
  335 F. Supp. 3d 13 (D.D.C. 2018) ...................................................... 6, 13

*S.H. v. Dist. of Columbia*,
  270 F. Supp. 3d 260 (D.D.C. 2017) ......................................................... 38

*Santiago v. Warminster Twp.*,
  629 F.3d 121 (3d Cir. 2010) ..................................................................... 14

*Schall v. Martin*,
  467 U.S. 253 (1984) .................................................................................. 42

*Settles v. United States Parole Comm'n*,
  429 F.3d 1098 (D.C. Cir. 2005) .................................................................. 7

*Sherrod v. McHugh*,
  334 F. Supp. 3d 219 (D.D.C. 2018) .................................................... 30, 31

*Shulman v. Miskell*,
  626 F.2d 173 (D.C. Cir. 1980) ................................................................. 31

*Sloman v. Tadlock*,
  21 F.3d 1462 (9th Cir. 1994) ............................................................. 35, 37

*Storms v. Shinseki*,
  319 F. Supp. 3d 348 (D.D.C. 2018) .................................................... 25, 44

*Strickland v. Shalala*,
  123 F.3d 863 (6th Cir. 1997) ..................................................................... 7

*Tanvir v. Tanzin*,
  889 F.3d 72 (2d Cir. 2018) ....................................................................... 43

\* *Tanvir v. Tanzin*,
  No. 16-1176, 2019 U.S. App. LEXIS 4519 (2d Cir. Feb. 14, 2019) ........ 44

*Teamsters v. Terry,*
   494 U.S. 558 (1990) ........................................................................................ 45

\* *Thompson v. Rahr,*
   885 F.3d 582 (2018), *cert. denied Thompson v. Copeland,* 139 S. Ct. 381 (2018) ........... 38, 39

*Thorp v. Dist. of Columbia,*
   142 F. Supp. 3d 132 (D.D.C. 2015) ................................................................ 31

*United States v. Anderson,*
   854 F.3d 1033 (8th Cir. 2017) ........................................................................ 42

\* *United States v. Bundy,*
   No. 16-46, 2017 U.S. Dist. LEXIS 2848 (D. Nev. Jan. 9, 2017) ........................... 3, 4

\* *United States v. Bundy,*
   No. 16-46, 2017 U.S. Dist. LEXIS 17838 (D. Nev. Feb. 7, 2017). ............................. 4, 5, 9, 35

\* *United States v. Bundy,*
   No. 98-531, 2018 U.S. Dist. LEXIS 116435 (D. Nev. July 12, 2018) ................................ 1, 29

*United States v. Caicedo-Llanos,*
   960 F.2d 158 (D.C. Cir. 1992) ........................................................................ 28

*United States v. Calandra,*
   414 U.S. 338 (1974) ........................................................................................ 20

*United States v. Caruto,*
   663 F.3d. 394 (9th Cir. 2011) .......................................................................... 20

*United States v. Christie,*
   825 F.3d 1048 (9th Cir. 2016) ........................................................................ 42

*United States v. Davis,*
   657 F. Supp. 2d 630 (D. Md. 2009) ................................................................ 42

*United States v. Dillard,*
   884 F. Supp. 2d 1177 (D. Kan. 2012) ............................................................. 41

*United States v. Epstein,*
   91 F. Supp. 3d 573 (D.N.J. 2015) ................................................................... 43

*United States v. Feola,*
   420 U.S. 671 (1975) ........................................................................................ 33

*United States v. Gaudin,*
    515 U.S. 506 (1995) ................................................................................. 20

*United States v. Goldstein,*
    914 F.3d 200 (3d Cir. 2019) ..................................................................... 43

*United States v. Gonzalez,*
    121 F.3d 928 (5th Cir. 1997) .................................................................... 33

*United States v. Jeffs,*
    No. 2016 U.S. Dist. LEXIS 158676 (D. Utah Nov. 15, 2016) .................. 41

*United States v. Jim,*
    865 F.2d 211 (9th Cir. 1989) .................................................................... 33

*United States v. Kleinbart,*
    27 F.3d 586 (D.C. Cir. 1994) ............................................................. 33, 34

*United States v. Mechanik,*
    475 U.S. 66 (1986) ................................................................................... 20

*United States v. Meixner,*
    128 F. Supp.2d 1070 (E.D. Mich. 2001) .................................................. 42

*United States v. Nesbitt,*
    669 F. App'x 534 (11th Cir. 2016) ........................................................... 33

*United States v. Quinn,*
    475 U.S. 791 (1986) ................................................................................. 28

*United States v. Salerno,*
    481 U.S. 739 (1987) ................................................................................. 21

*United States v. Scott,*
    74 F.3d 175 (9th Cir. 1996) ...................................................................... 33

*United States v. Sheffield,*
    832 F.3d 296 (D.C. Cir. 2016) ................................................................. 28

*United States v. Staggs,*
    553 F.2d 1073 (7th Cir. 1977) .................................................................. 33

*United States v. Stimler,*
    864 F.3d 253 (3d Cir. 2017) ..................................................................... 43

*United States v. Virginia Erection Corp.*,
  335 F.2d 868 (4th Cir. 1964) ........................................................................ 21

*United States v. Washington*,
  106 F.3d 1488 (9th Cir. 1997) ...................................................................... 33

*United States v. Williams*,
  504 U.S. 36 (1992) ............................................................................... 20, 37

*Van de Kamp v. Goldstein*,
  555 U.S. 335 (2009) ................................................................................. 10

\* *Vennes v. An Unknown Number of Unidentified Agents*,
  26 F.3d 1448 (1994) .............................................................................. 23, 24

*Vill. of Bensenville v. FAA*,
  457 F.3d 52 (D.C. Cir. 2006) ................................................................... 11, 12

*Wallace v. Kato*,
  549 U.S. 384 (2007) ................................................................................. 10

*Washington v. White*,
  No. 18-333, 2018 U.S. Dist. LEXIS 147605 (C.D. Cal. Aug. 28, 2018) ................... 36

*Webman v. BOP*,
  441 F.3d 1022 (D.C. Cir. 2006) .................................................................... 44

*White v. Pauly*,
  137 S. Ct. 548 (2017) ............................................................................ 39, 41

*Whitfield v. City of Philadelphia*,
  587 F. Supp. 2d 657 (E.D. Pa. 2008) ............................................................. 11

*Wilkie v. Robbins*,
  551 U.S. 537 (2007) .......................................................................... 17, 19, 25

*Williams v. United States*,
  396 F.3d 412 (D.C. Cir. 2005) ...................................................................... 7

*Wilson v. Layne*,
  526 U.S. 603 (1999) ................................................................................. 30

*Wood v. Moss*,
  572 U.S. 744 (2014) ............................................................................ 13, 25

*Wormley v. United States,*
   601 F. Supp. 2d 27 (D.D.C. 2009) ........................................................................ 9

*Yousefian v. City of Glendale,*
   779 F.3d 1010 (9th Cir. 2015) ........................................................................... 34

\* *Ziglar v. Abbasi,*
   137 S. Ct. 1843 (2017) ............................................................................... passim

<u>Statutes</u>

U.S. Const. amend V, cl. 1 .................................................................................. 20

18 U.S.C. § 1964(c) ........................................................................................... 45

18 U.S.C. § 2333(a) ........................................................................................... 45

The Federal Wiretap Act, 18 U.S.C. § 2520(b) .................................................. 44

18 U.S.C. § 3006A .............................................................................................. 21

18 U.S.C. § 3142(f) ............................................................................................ 21

18 U.S.C. §§ 3141-51 ......................................................................................... 21

28 U.S.C. § 1605A(c) ......................................................................................... 45

28 U.S.C. § 2241 ................................................................................................ 21

28 U.S.C. § 2513 ................................................................................................ 22

42 U.S.C. § 1983 ......................................................................................... 1, 5, 6

42 U.S.C. § 1985 ................................................................................................ 44

42 U.S.C. § 2000bb(b)(1) .................................................................................. 11

42 U.S.C. 2000bb-1 ................................................................................ 5, 40, 43

42 U.S.C. § 2000bb-2(1) .................................................................................... 43

The Telecommunication Act, 47 U.S.C. § 605(e)(3) ......................................... 44

The Foreign Intelligence Surveillance Act, 50 U.S.C. § 1810 .......................... 44

D.C. Code § 12-301(8) ......................................................................................... 8

D.C. Code § 12-302(a)(3) ............................................................................................ 9

The Torture Victim Protection Act , Pub. L. 102-256, March 12, 1992, 106 Stat. 73 ................ 45

Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (codified at 18 U.S.C. § 3006A) ....... 21

Rules

Fed. R. App. P. 4(b) ................................................................................................... 21

Fed. R. App. P. 9 ........................................................................................................ 21

Fed. R. Crim. P. 3 ...................................................................................................... 20

Fed. R. Crim. P. 5.1 ................................................................................................... 20

Fed. R. Crim. P. 6 ...................................................................................................... 20

Fed. R. Crim. P. 7 ...................................................................................................... 20

Fed. R. Crim P. 12 ..................................................................................................... 20

Fed. R. Crim. P. 23-31 ............................................................................................... 20

Fed. R. Crim. P. 26.3 ................................................................................................. 20

Fed. R. Crim. P. 32-39 ............................................................................................... 20

Fed. R. Crim. P. 33 .................................................................................................... 21

Fed. R. Evid. 201 ......................................................................................................... 5

Other Authorities

Restatement (Second) of Torts § 659 comment f (1977) ............................................. 35

Restatement (Second) of Torts § 663 (1977) ............................................................... 35

143 Cong. Rec. H7786-04, H7791 (Sept. 24, 1997) (statement of Rep. Hyde) ........................ 21

Statement of Honorable Henry J. Hyde before House Rules Committee on Amendment to
     H.R. 2267, 1997 WL 545756 (Sept. 5, 1997) ....................................................... 22

xvi

## INTRODUCTION

In 1998, a federal court enjoined Cliven Bundy from grazing his cattle on federal land. *See United States v. Bundy*, No. 98-531, 2018 U.S. Dist. LEXIS 116435, *1 (D. Nev. July 12, 2018). Mr. Bundy ignored that order. *Id.* at *2. Fifteen years later, the court again enjoined Mr. Bundy from grazing his cattle on federal land, and this time authorized "the United States to impound any of Bundy's livestock that remained on the property." *Id.* The court further "commanded Bundy to not interfere with any impoundment operations." *Id.* at *3. On April 12, 2014, as federal officers from the Bureau of Land Management attempted to seize the cattle, the Bundys (including Plaintiff Ryan Bundy) and their *armed* supporters descended onto the scene, causing an armed standoff. The incident led to federal charges against the Bundys (including Plaintiff) and some of their supporters on various counts relating to assaulting and threatening federal officers.

The criminal charges against Plaintiff were ultimately dismissed and he filed this lawsuit. The complaint alleges two kinds of claims: (1) those challenging the events that occurred at the standoff (Counts One and Four); and (2) those challenging the prosecution (Counts Two, Three, Five, and Six). All six claims warrant dismissal. *First*, three counts are brought under 42 U.S.C. § 1983, which does not apply to federal actors. *Second*, the two claims challenging the events that occurred at the April 12, 2014, standoff are time-barred. *Third*, the former Attorneys General are entitled to absolute immunity on the prosecution-based claims because those claims challenge the decision to initiate the prosecution. *Fourth*, Defendants James Comey and Neil Kornze are entitled to qualified immunity on all counts because the complaint fails to sufficiently allege their personal participation in any alleged wrong. *Fifth*, special factors counsel hesitation against creating a new constitutional damages action for the wrongful prosecution-based claims. *Sixth*, all Defendants are entitled to qualified immunity on the five constitutional damages claims because the complaint

fails to plead clearly established constitutional violations. *Seventh*, the Court should dismiss the remaining claim brought under the Religious Freedom Restoration Act because the Act does not create a private cause of action for damages against federal officers in their individual capacities, and even if it did, the claim lacks merit.

For all these reasons, the Defendants' motion to dismiss should be granted.

## BACKGROUND

This lawsuit arises out of Plaintiff Ryan Bundy's arrest and prosecution for participating in an armed standoff between the Bundy family and their supporters and federal officers. Plaintiff is Cliven Bundy's son. He filed this civil suit against some of the highest-ranking federal officials in the Executive Branch, including three former Attorneys General: Jefferson B. Sessions, III, Loretta Lynch, and Eric Holder; former Director of the Federal Bureau of Investigation (FBI) James Comey; and former Director of the Bureau of Land Management (BLM) Neil Kornze. Complaint ("Compl.") ¶¶ 7-11. Defendants are each sued in their individual capacities only. *Id.*

According to the complaint, the federal government "invaded" the Bundy ranch, located in Bunkerville, Nevada, in April 2014, to "collect grazing fees." *Id.* ¶¶ 14-15, 29. The result was a "standoff" between the officers and the Bundy family and their supporters. *Id.* ¶¶ 16, 29. Plaintiff was present on the scene, allegedly to "defend his and his family's rights." *Id.* ¶ 18. Although he maintains he never "took up arms," he did in fact carry a firearm during the standoff. *Id.* ¶¶ 17, 34. Armed supporters from across the country descended onto the scene. *Id.* ¶ 34. At some unspecified point during the standoff unnamed officers allegedly pointed their guns at the Bundy supporters and threatened them. *Id.* ¶¶ 36-37. At some unspecified point during the standoff several of the Bundy supporters pointed their guns back at the officers, allegedly in "self-defense." *Id.* ¶ 38.

On February 17, 2016, Plaintiff was indicted on charges relating to his participation in the standoff, with a superceding indictment issuing on March 2, 2016, to add additional defendants. *Id.* ¶ 18; *see also United States v. Bundy*, No. 2:16-cr-46 (D. Nev.) (ECF 5, 27) (Ex. 1 – Excerpted Nevada Docket Sheet). Specifically, a grand jury indicted him on eight counts, including (1) conspiracy to commit an offense against the United States, (2) conspiracy to impede or injure a federal officer, (3) use and carry of a firearm in relation to a crime of violence and aiding and abetting, (4) assault on a federal officer and aiding and abetting, (5) threatening a federal officer and aiding and abetting, (6) obstruction of justice and aiding and abetting, (7) interference with interstate commerce by extortion and aiding and abetting, and (8) interstate travel in aid of extortion and aiding and abetting. *Id.* (ECF 27) (Ex. 2 - Superceding Indictment). A warrant for his arrest issued on March 2, 2016. *Id.* (ECF 38) (Ex. 1). Because Plaintiff was already in custody in Oregon on separate charges, the district court issued a writ of habeas corpus ad prosequendum. *Id.* (ECF 55-56) (Ex. 1). Plaintiff was arraigned on April 15, 2016. (ECF 247) (Ex. 1).

On April 20, 2016, the district court held a detention hearing and found probable cause to detain Plaintiff, stating:

> Together with members of his family and other persons, including militias [*sic*] members who assembled in the Bunkerville area in April 2014, defendant resisted the efforts of the Bureau of Land Management to enforce court orders relating to the removal of cattle from federal land. That resistance allegedly culminated in an armed confrontation between supporters of the defendant and the Bundy Family and federal law enforcement officers at the cattle impound site during which firearms were displayed and/or pointed at federal law enforcement officers. The federal law enforcement officers were allegedly forced to surrender the cattle and leave the impound site to avoid a fire fight.

*Id.* (ECF 298) (Ex. 3 - Detention Order). In December 2016, Plaintiff sought to reopen his detention hearing "[t]o determine if the government falsely alleged that a peaceful public protest qualified as an 'assault' on federal officers." *United States v. Bundy*, No. 16-46, 2017 U.S. Dist. LEXIS

2848, *11 (D. Nev. Jan. 9, 2017). The magistrate judge agreed to let Plaintiff "present evidence to refute the probable cause finding underlying the superceding indictment." *United States v. Bundy*, No. 16-46, 2017 U.S. Dist. LEXIS 17838, *34 (D. Nev. Feb. 7, 2017). Plaintiff testified at the hearing and called three witnesses. *Id.* at *4. He was also given the opportunity to provide written objections and responses to the government's evidence supporting the superceding indictment. *Id.* at *6. At the hearing, Plaintiff claimed (like he does here) that "the confrontation at the Impoundment Site on April 12, 2014 was a peaceful public protest, and that it was BLM officers and other federal officers who were the aggressors, and who pointed firearms at the protesters and threatened to shoot them." *Id.* at *12. The magistrate judge reviewed the evidence and made the following factual findings:

- "Video and photograph evidence presented during the hearing supports the allegation that Defendant Cliven Bundy directed, or at minimum encouraged, gunmen and other Followers to travel to the Impoundment Site on April 12, 2014 to confront the BLM officers and compel them to release the cattle;"

- "Photographs also show that Defendant Ryan Bundy was present on the stage with Cliven Bundy when this announcement was made;"

- "Photographs introduced during the hearing also depict individuals armed with rifles or 'long-guns' among the crowd of people who approached the Impoundment Site;"

- "Other photographs depict individuals . . . apparently aiming firearms in the direction of the federal officers."

*Id.* at *12-13. The judge acknowledged evidence showing "federal officers pointing their weapons in the direction of the protesters," and further that "[t]here is no indication that [Ryan] Bundy, himself, acted in a physically aggressive or threatening manner toward the federal officers in the Impoundment Site." *Id.* at *13. But the judge also listened to recorded statements made by Plaintiff prior to the standoff during which he was asked by a federal officer if he planned to use "physical force or violence" to interfere with the impoundment. *Id.* at *10. Plaintiff responded, "I will do whatever it takes; you interpret that the way you want." *Id.* The judge found that "[a] reasonable

interpretation of [Ryan] Bundy's statements . . . was that he and his associates would use force to resist the BLM's impoundment efforts." *Id.* at *16. The judge also reviewed a statement by Plaintiff's brother, Ammon Bundy, after the standoff indicating that "our intent was peaceful . . . although we did have militia and weapons, I think that was important because they, they didn't know for sure if we were going to fire on them." *Id.* at *14. Based on this evidence, the magistrate judge rejected the probable cause challenge and ordered Plaintiff's continued detention. *Id.* at *21.

Plaintiff's trial began on October 30, 2017. *See Bundy*, No. 16-46 (D. Nev.) (ECF 2796) (Ex. 1). However, on the 16th day of trial, the district court declared a mistrial based on purported violations of *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* (ECF 3041) (Ex. 1). Based on those alleged violations, the district court dismissed the case with prejudice. *Id.* (ECF 3116, 3117) (Ex. 1); *see also* Compl. ¶¶ 58-60. The United States has appealed that order of dismissal and the appeal is currently pending before the Ninth Circuit. *See United States v. Bundy*, No. 18-10287.[1]

Plaintiff here alleges six claims: (1) Fourth Amendment unlawful search and seizure against Defendants Comey and Kornze under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) (Count One); (2) First Amendment retaliation against all Defendants under *Bivens* (Count Two); (3) a claim against all Defendants under the Religious Restoration Freedom Act (RFRA), 42 U.S.C. 2000bb-1 (Count Three); (4) Fourth Amendment excessive force against Defendants Comey and Kornze under 42 U.S.C. § 1983 (Count Four); (5)

---

[1] Not all of these facts appear in the complaint, but it is well settled that Rule 201 of the Federal Rules of Evidence permits a court to take judicial notice of undisputed matters of public record, including public records from other court proceedings. *See Lewis v. DEA*, 777 F. Supp. 2d 151, 159 (D.D.C. 2011) (citing *Covad Commc'ns. Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005)); *Lewis v. Parker*, 67 F. Supp. 3d 189, 195 n.6 (D.D.C. 2014); *see also Morris v. United States Sentencing Comm'n*, 62 F. Supp. 3d 67, 75 (D.D.C. 2014) ("In deciding a motion to dismiss under Rule 12(b)(6), the Court may take judicial notice of facts litigated in a prior related case.") (citation omitted); Fed. R. Evid. 201. For convenience of the court, we attach as exhibits to this memorandum referenced ECF filings and criminal dockets from the other proceedings.

First Amendment retaliation against all Defendants under Section 1983 (Count Five); and (6) Fourth Amendment malicious prosecution against all Defendants under Section 1983 (Count Six).

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Mere labels and conclusions or naked assertion[s] devoid of further factual enhancement are insufficient." *Robinson v. Howard Univ., Inc.*, 335 F. Supp. 3d 13, 21 (D.D.C. 2018) (internal quotations and citation omitted). Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). In evaluating a motion to dismiss, the court may "draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. The court need not accept legal conclusions or mere conclusory statements as true. *Robinson*, 335 F. Supp. 3d at 21 (citation omitted). Finally, the court "may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## ARGUMENT

## I.     Defendants cannot be sued under Section 1983, which applies to state actors.

Plaintiff alleges three constitutional damages claims (Counts Four, Five, and Six) against all Defendants under 42 U.S.C. § 1983. That is improper. "Section 1983 provides a remedy against 'any person' who, *under color of state law*, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992) (emphasis added); *see also Cohen v. Univ. of Dist. of Columbia*, 311 F. Supp. 3d 242, 254 (D.D.C. 2018); 42 U.S.C. § 1983. No state actor is named as a defendant in this lawsuit. Plaintiff sues only high-ranking federal

officials alleged to have acted under color of their federal offices "as principals of national agencies headquartered in Washington, D.C." Compl. ¶ 12. Although the complaint makes reference to certain "State Actors," it defines that phrase to *exclude* the named Defendants. *Id.* ¶ 39 (defining "State Actors" as the Clark County Sheriff's Department). It is well settled that Section 1983 does not authorize suit against federal officers acting under color of federal law. *See Settles v. United States Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005); *Harbury v. Hayden*, 444 F. Supp. 2d 19, 42 (D.D.C. 2006); *see also Morse v. N. Coast Opps., Inc.*, 118 F.3d 1338, 1343 (9th Cir. 1997) ("Lest there be any continuing confusion, we take this opportunity to remind the Bar that by its very terms, § 1983 precludes liability in federal government actors.").

Courts have left open the possibility that federal actors can be subject to Section 1983 liability if they conspire with state actors, but only if there is a sufficiently close nexus between the State and the federal actor such that the action of the latter may be fairly treated as that of the State itself. But as the court explained in *Harbury*, 444 F. Supp. 2d at 42-12:

> Even where courts have found that a federal official, acting under color of federal law, can possibly be deemed to act under color of state law if he or she conspires or acts in concert with state officials, these courts have generally held that there is no "state action" under Section 1983 unless there has been a misuse of power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law."

(internal citation omitted).[2] Here, the complaint challenges a *federal* operation by the *federal* government to collect *federal* grazing fees that led to a *federal* indictment charging Plaintiff with *federal* crimes for assaulting and threatening *federal* officers. Compl. ¶¶ 12, 15, 29. None of these

---

[2] *See also Williams v. United States*, 396 F.3d 412, 414-15 (D.C. Cir. 2005) (arrestee could not bring Section 1983 action despite conspiracy allegations because defendant is a federal officer and only the federal government gave him power to arrest; D.C. did not have authority over him and did not "exercise [any] coercive power" through him; and D.C. officials had minimal involvement, in any event); *Strickland v. Shalala*, 123 F.3d 863, 866 (6th Cir. 1997) ("Because federal officials typically act under color of federal law, they are rarely subject to liability under § 1983.").

alleged acts could be fairly treated as conduct on behalf of the State, let alone conduct sufficient to create Section 1983 liability. Moreover, common sense dictates that, in allegedly sending in federal officers to enforce federal grazing fees and then initiating a federal prosecution, the former Attorneys General of the United States Department of Justice and the former FBI and BLM Directors were not somehow cloaked in the authority of the Nevada Clark County Sheriff's Department. Indeed, the complaint goes to great lengths to emphasize that at all times the alleged State Actors acted at the "direction" of the federal defendants, not vice versa. Compl. ¶¶ 12, 86, 91-96, 103-04, 109-13. Accordingly, Counts Four, Five, and Six fail to state a claim against all Defendants because at all times these federal officials were acting under color of federal law. *See Morgan v. United States*, 60 F. App'x 180, 181 (9th Cir. 2003) (district court correctly dismissed Section 1983 claim because federal officers "initiated the law enforcement activities at issue" and state officers were working at their "bequest," thus, even "if they were acting jointly, it was under federal law").

But even if this Court construes these claims as brought under *Bivens* (the federal counterpart to Section 1983), they would fare no better.

## II. The unlawful search and seizure and excessive force claims against Defendants Comey and Kornze are time-barred.

The complaint alleges two claims against Defendants Comey and Kornze challenging the events that occurred on April 12, 2014 (Counts One and Four). Those two claims, for unlawful search and seizure and excessive force, are time-barred. For *Bivens* and Section 1983 claims, the D.C. three-year statute of limitations for personal injury actions applies. *Jones v. Kirchner*, 835 F.3d 74, 80-82 (D.C. Cir. 2016); D.C. Code § 12-301(8). A claim for unlawful search and seizure, including excessive force, accrues immediately. *See Evans v. Poskon*, 603 F.3d 362, 363 (7th Cir. 2010); *see also Loumiet v. United States*, 828 F.3d 935, 947 (D.C. Cir. 2016) ("Ordinarily, accrual

occurs when the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief.") (internal quotation and citation omitted). Here, the alleged unlawful search and seizure and use of force occurred on April 12, 2014. Compl. ¶¶ 15, 29; *see also Bundy*, 2017 U.S. Dist. LEXIS 17838, at 12-13. Plaintiff thus had three years, until April 12, 2017, to file suit. He did not do so until October 31, 2018, more than 18 months too late. Thus, Counts One and Four against Defendants Comey and Kornze should be dismissed with prejudice as time-barred.[3]

### III. The prosecution-based claims against Attorneys General Sessions, Lynch, and Holder are barred by absolute immunity.

Turning to the prosecution-based claims, the complaint alleges three constitutional claims and one RFRA claim, all alleging retaliatory or malicious prosecution (Counts Two, Three, Five, and Six). Those claims against Attorneys General Sessions, Lynch, and Holder are barred by absolute immunity.[4]

---

[3] Although D.C. tolls the statute of limitations for periods of imprisonment, *see Jones*, 835 F.3d at 80, that provision only applies where the plaintiff was imprisoned "at the time the right of action accrues." D.C. Code § 12-302(a)(3)); *see also Fernandors v. Dist. of Columbia*, 382 F. Supp. 2d 63, 68 (D.D.C. 2005) ("In order to toll the limitations period, plaintiff's tort action must have accrued at the time of his imprisonment."); *Wormley v. United States*, 601 F. Supp. 2d 27, 36 (D.D.C. 2009) ("The tolling statute operates only if plaintiff is imprisoned at the time the right of action accrues.") (internal quotations and citation omitted). Plaintiff makes no allegation that he was imprisoned when his unlawful search and seizure and excessive force claims accrued on April 12, 2014. Even if D.C.'s tolling statute applied to after-accrual periods of imprisonment, that would still not render Plaintiff's claims timely. Plaintiff was not first imprisoned until he was arrested in the District of Oregon on January 26, 2016. *United States v. Bundy*, No. 16-cr-51 (D. Ore.) (ECF 14, 19, 25) (Ex. 4 - Excerpted Oregon Docket Sheet). Assuming the clock stopped on that date, Plaintiff had 76 days to file suit upon his release from prison. The District of Nevada released Plaintiff from all conditions of confinement on January 8, 2018. *Bundy*, No. 16-cr-64 (D. Nev.) (ECF 3116) (Ex. 1). Assuming he still had 76 days to file suit, he needed to do so by March 25, 2018. He filed suit on October 31, 2018, approximately 7 months too late. Even using the date when the District of Oregon entered judgment in Plaintiff's favor – although Plaintiff was not imprisoned at that time and so this date should not apply – the date of that order was March 6, 2018. *Bundy*, No. 16-cr-51 (D. Ore.) (ECF 2584, 2585) (Ex. 4). Using that date, Plaintiff still had to file suit by May 19, 2018. He missed that date by approximately 5 months.

[4] The First Amendment retaliation and RFRA claims purport to challenge not only the prosecution of Plaintiff, but also his arrest and incarceration. Compl. ¶¶ 73, 80-81, 101-04. However, because

Prosecutors have long been entitled to absolute immunity from civil suits challenging acts within the scope of their advocacy functions. *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976). To determine whether an action is protected by absolute immunity, courts take a "functional approach," focusing on "the nature of the function performed, not the identity of the person performing it." *Moore v. Valder*, 65 F.3d 189, 193 (D.C. Cir. 1995) (citing *Burns v. Reed*, 500 U.S. 478, 486 (1991)). Under that approach, absolute immunity applies to all conduct that is "advocatory in nature." *Id.* (citation omitted); *see also Gray v. Bell*, 712 F.2d 490, 499 (D.C. Cir. 1983) ("The controlling question under this approach is whether the conduct in question is so closely associated with the judicial process that it can be characterized as advocatory."). When the basis for suit is a subordinate prosecutor's advocacy, absolute immunity extends to bar suit against supervisory-level prosecutors as well. *See Van de Kamp v. Goldstein*, 555 U.S. 335, 344-46 (2009) (extending prosecutorial immunity to supervisory prosecutors); *see also Dellums v. Powell*, 660 F.2d 802, 805-07 (D.C. Cir. 1981) (Attorney General immune from suit over initiation of a prosecution).

Here, the complaint alleges that Attorneys General Sessions, Lynch, and Holder initiated the criminal case against Plaintiff maliciously and for retaliatory purpose – even though Defendants Holder and Sessions were not even in office at the time, a point the complaint acknowledges in alleging that Defendant Lynch herself initiated the prosecution. *See* Compl. ¶ 18, 50, 52-23. The complaint also alleges that Defendant Sessions maliciously allowed the United

---

Plaintiff was arrested and incarcerated pursuant to legal process (and not before), all three alleged acts collapse into a single tort for retaliatory prosecution. As the Supreme Court explained in *Wallace v. Kato*, 549 U.S. 384, 389-90 (2007) (citations omitted):

> If there is a false arrest claim, damages for that claim cover the time of detention *up until issuance of process or arraignment*, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself.

States to appeal the dismissal of the criminal case. *Id.* ¶ 51, 62-63. It is well established that the decision to initiate a prosecution is "unquestionably advocatory." *Moore*, 65 F.3d at 194. Accordingly, the Supreme Court and the D.C. Circuit have held that prosecutors are immune from suit for such decisions. *See Imbler*, 424 U.S. at 431; *Hartman v. Moore*, 547 U.S. 250, 262–63 (2006); *Gray*, 712 F.2d at 505. Courts have also held that absolute immunity protects the decision whether to appeal in a criminal case. *See Whitfield v. City of Philadelphia*, 587 F. Supp. 2d 657, 666 (E.D. Pa. 2008); *see also Occhipinti v. Bauer*, No. 13-1875, 2016 U.S. Dist. LEXIS 38766, *30 (M.D. Pa. Mar. 23, 2016) ("Recognizing this fundamental difference between appellate advocacy and investigative activity, courts have frequently rebuffed efforts to deny absolute immunity to appellate decisions by prosecutors.") (collecting cases). Thus, regardless of whether Counts Two, Three, Five, and Six are brought under *Bivens*, Section 1983, or RFRA, absolute immunity protects Attorneys General Sessions, Lynch, and Holder from civil liability for any decision related to their advocacy functions, and as those counts are the only claims brought against these Defendants, the Court should dismiss them from this case altogether.[5]

---

[5] The Supreme Court has recognized that statutes creating private rights of action against government officials are "to be read in harmony with general principles of tort immunities and defenses rather than in derogation of them." *Imbler*, 424 U.S. at 418; *see also Rehberg v. Paulk*, 566 U.S. 356, 361-63 (2012). Thus, courts, including the D.C. Circuit, have applied common law tort immunities, such as qualified immunity, to RFRA claims. *See Rasul v. Myers*, 563 F.3d 527, 533 n.6, (D.C. Cir. 2009) ("[D]efendants are entitled to qualified immunity against plaintiffs' RFRA claim."); *Boatwright v. Jacks*, 239 F. Supp. 3d 229, 234 (D.D.C. 2017) (applying qualified immunity to RFRA claim); *Lebron v. Rumsfeld*, 764 F. Supp. 2d 787, 804 (D.S.C. 2011) (collecting additional cases), *aff'd by* 670 F.3d 540, 559-60 (4th Cir. 2012) (also applying qualified immunity to RFRA claim). That approach makes sense. For one thing, qualified immunity has long been recognized to apply to statutory rights claims. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Davis v. Scherer*, 468 U.S. 183, 194 n.12 (1984). For another, the purpose of RFRA was to restore the compelling interest test thought previously applicable to free-exercise claims prior to the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990). *See Vill. of Bensenville v. FAA*, 457 F.3d 52, 60 (D.C. Cir. 2006) (citation omitted); *see also* 42 U.S.C. § 2000bb(b)(1). RFRA was not intended to "unsettle other areas of the law" or "expand, contract or alter the ability of a claimant to obtain relief in a manner consistent with the Supreme Court's free

**IV.    Defendants Comey and Kornze are entitled to qualified immunity on all claims because the complaint fails to allege their personal participation in any alleged wrong.**

The complaint brings all six claims against Defendants Comey and Kornze, but it fails to sufficiently allege their personal participation in any of the alleged wrongs. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *see also id.* at 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."). Thus, to be held liable under *Bivens* and Section 1983, "the defendant must have *participated personally* in the alleged wrongdoing." *Anderson v. Gates*, 20 F. Supp. 3d 114, 124 (D.D.C. 2013); *Halim v. Donovan*, 951 F. Supp. 2d 201, 208 (D.D.C. 2013) (same); *Burke v. Lappin*, 821 F. Supp. 2d 244, 247 (D.D.C. 2011) (same). The same personal participation requirement applies to RFRA claims. *See Patel v. Bureau of Prisons*, 125 F. Supp. 3d 44, 54-57 (D.D.C. 2015).

With respect to the prosecution-based claims (Counts Two, Three, Five, and Six), the complaint never alleges that Defendants Comey and Kornze personally caused the initiation of criminal proceedings. Instead, the complaint alleges that Defendant Lynch "personally caused and instituted the indictment," and seeks to hold her liable for doing so. Compl. ¶ 50. In fact, in the entire section labeled "Facts Pertaining to Prosecutorial Misconduct," Defendants Comey and Kornze are not mentioned once. *Id.* ¶¶ 48-63. Having failed to allege their personal participation at all, they are entitled to qualified immunity on the prosecution-based claims. *See Jones v. Horne*,

---

exercise jurisprudence." *Id.* at 62 (internal quotations omitted). As relevant here, prosecutors have long been entitled to absolute immunity from First Amendment retaliatory prosecution claims. *See Hartman*, 547 U.S. at 262-63 ("A *Bivens* (or § 1983) action for retaliatory prosecution will not be brought against the prosecutor, who is absolutely immune from liability for the decision to prosecute.") (citation omitted). Nothing in the plain text of RFRA indicates a congressional intent to override that immunity.

634 F.3d 588, 602 (D.C. Cir. 2011) (dismissing Section 1983 claim against acting warden where complaint failed to allege he personally participated in the decision to transfer plaintiff); *Anderson*, 20 F. Supp. 3d at 124 (dismissing *Bivens* claim against defendant not alleged to have personally participated in the alleged misconduct).[6]

Plaintiff also failed to sufficiently allege personal participation on the unlawful search and seizure and excessive force claims (Counts One and Four), which are brought against Defendants Comey and Kornze only. Indeed, other than listing their names, titles, and alleged status as "persons" under Section 1983, Compl. ¶¶ 10-11, 24, 26, 85, the complaint does not contain any specific allegations against them. Neither is alleged to have seized any property or used any force, and neither is alleged to have even been present during the standoff. Instead, the complaint repeats in conclusory fashion that they *directed* officers to invade the Bundy ranch and that each "used his agency . . . to violate the constitutional and other rights of Ryan." *Id.* ¶ 15, 25, 27, 29, 38, 66, 86, 90-96. These conclusory statements are not entitled to the assumption of truth. *Robinson*, 335 F. Supp. 3d at 21. Courts repeatedly reject such bare allegations of supervisory liability. *See Blantz v. Cal. Dep't of Corr. & Rehab.*, 727 F.3d 917, 927 (9th Cir. 2013) (rejecting conclusory allegation that supervisors "directed" subordinate's conduct without specific factual assertions to support the allegation); *Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012) (rejecting conclusory

---

[6] Even if Defendants Comey and Kornze did participate in the decision to prosecute Plaintiff, there is no allegation with sufficiently supporting factual content that *any* of the named defendants acted with an intent to retaliate against Plaintiff based on his religion. The complaint references a so-called "Whistleblower Report" indicating that some unnamed BLM agents displayed a "clear prejudice" against Plaintiff. *See* Compl. ¶¶ 44-47. But the Supreme Court has refused to infer a department-wide intent to retaliate based on the alleged actions of a few. *See Wood v. Moss*, 572 U.S. 744, 763-64 (2014). It would be especially inappropriate to apply that inference to some of the highest-ranking officials within the Executive Branch. Instead, as the Supreme Court has made clear, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, 556 U.S. at 677. And something more than a conclusory allegation of an intent to discriminate is required to survive a motion to dismiss. *Id.* at 686-87.

allegation that supervisors "personally reviewed and, thus, knowingly ordered, directed, sanctioned or permitted" unlawful conduct); *Santiago v. Warminster Twp.*, 629 F.3d 121, 131 (3d Cir. 2010) (rejecting conclusory allegation that supervisors directed others to violate plaintiff's rights as "formulaic recitation of the elements of a [supervisory liability] claim"); *see also Acosta Orellana v. CropLife Int'l*, 711 F. Supp. 2d 81, 112 (D.D.C. 2010) ("[T]o show that such action was taken at the direction of another requires more than just the conclusion that that is what occurred.").

It is clear that Plaintiff seeks to hold Defendants Comey and Kornze liable simply because they were the Directors of their respective agencies at the time of the standoff. That is just a blatant attempt to pursue vicarious liability under *Bivens* and Section 1983, something the Supreme Court has rejected. *Iqbal*, 556 U.S. at 676; *see also Barham v. Ramsey*, 434 F.3d 565, 578 (D.C. Cir. 2006) ("Merely being [the alleged wrongdoer's] supervisor [is] not enough to attach liability."); *Richardson v. Dist. of Columbia*, 322 F. Supp. 3d 175, 183 (D.D.C. 2018) ("[I]t is well established that a plaintiff may not hold a supervisor liable . . . based solely on his status as a supervisor."). If a plaintiff could file suit challenging any law enforcement action, and then withstand a motion to dismiss by simply alleging that the head of that law enforcement agency "directed" the conduct in question, high-ranking officials would find themselves embroiled in litigation throughout this country. That approach was also rejected in *Iqbal*. There, the plaintiffs alleged that former Attorney General John Ashcroft and former FBI Director Robert Mueller "maliciously agreed" to subject them to harsh conditions of confinement based on their race and religion, General Ashcroft created the policy, and Director Mueller implemented it. *See Iqbal*, 556 U.S. at 680-81. According to the Court, "[t]hese bare assertions . . . amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim . . . . As such, the allegations are conclusory and

not entitled to be assumed true." *Id.* at 681 (citations omitted). Further, pleading such bare elements cannot survive a motion to dismiss. *Id.* at 687. Courts in this district have rejected similar attempts to drag high-ranking officials into discovery on the barest of allegations. *See Dial v. Kane*, 315 F. Supp. 3d 556, 559-60 (D.D.C. 2018) (dismissing complaint where plaintiff "does not explain how such high-level officials contributed to or even knew about the conduct described"); *Morris*, 62 F. Supp. 3d at 75 (dismissing claim against Attorney General Holder because allegation that he directly participated in local proceeding was both conclusory and implausible); *Burke*, 821 F. Supp. 2d at 247-48 (dismissing complaint where plaintiff did not "allege[] sufficient facts for which the current and former high-level officials at BOP headquarters may be held liable"). The same cursory attempt fails here and Defendants Comey and Kornze are entitled to qualified immunity on all counts because the complaint fails to sufficiently allege their personal participation in the alleged wrongs.[7]

This is enough to end this case: (1) the unlawful search and seizure and excessive force claims are time-barred; (2) Attorneys General Sessions, Lynch, and Holder are entitled to absolute immunity on all claims brought against them; and (3) Defendants Comey and Kornze are entitled to qualified immunity because the complaint fails to sufficiently allege their personal participation in any alleged wrong. The Court need not go any further to grant this motion to dismiss. However, there are additional legal defects with Plaintiff's claims. We address those legal defects next.

---

[7] With respect to the excessive force claim (Count Four), it is also implausible to suggest that Defendants Comey and Kornze were directly involved in the minute-by-minute decisions made by officers on the scene as to whether to draw their weapons when confronted by the armed Bundy supporters. *See Argueta v. ICE*, 643 F.3d 60, 75-77 (3d Cir. 2011) (implausible to suggest that high-ranking federal officials directly participated in raids); *Farmer v. Moritsugu*, 163 F.3d 610, 615-16 (D.C. Cir. 1998) (implausible to suggest that Medical Director located in D.C. participated in medical decisions made at BOP facility); *see also Morris*, 62 F. Supp. 3d at 75 ("Consequently, high-level officials . . . typically are not subject to *Bivens* liability since they do not routinely participate personally in decisions about a particular individual at a particular location.").

**V.     Counts Two, Five, and Six should be dismissed because special factors preclude recognizing a *Bivens* claim for prosecution-based claims.**

Assuming all alleged constitutional damages claims are construed as brought under *Bivens*, Counts Two, Five, and Six present a new context for purposes of *Bivens* liability, and special factors counsel hesitation against implying a new damages remedy for wrongful prosecution-based claims. The Court should accordingly decline to extend the *Bivens* remedy to this new context.

In *Bivens*, the Supreme Court first recognized an implied cause of action for damages under the Fourth Amendment against federal officials "who violated the prohibition against unreasonable search and seizures." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017). It did so only after finding no "special factors counselling hesitation." *Bivens*, 403 U.S. at 396. Despite multiple invitations over the years, the Court has extended *Bivens* only twice, the most recent occasion more than three decades ago. *See Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). "These three cases – *Bivens*, *Davis*, and *Carlson* – represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S. Ct. at 1855. The Court indicated "it is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today." *Id.* at 1856. That is because "expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (citation omitted). Indeed, in the last 38 years, the Court has "consistently refused to extend *Bivens* liability to any new context or new category of defendants." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001).

In every *Bivens* case, "[t]he question is who should decide whether to provide for a damages remedy, Congress or the courts?" *Abbasi*, 137 S. Ct. at 1857. (internal quotations and citation omitted). "The answer most often will be Congress." *Id.* That is because "the decision to recognize a damages remedy requires an assessment of its impact on governmental operations systemwide." *Id.* at 1858. "In most instances, the Court's precedents now instruct, the Legislature

is in the better position to consider if the public interest would be served by imposing a new substantive legal liability." *Id.* at 1857 (internal quotations and citation omitted). "As a result, the Court has urged caution before extending *Bivens* remedies into any new context." *Id.* (internal quotations and citation omitted). Whenever special factors counsel *any hesitation*, "a *Bivens* remedy will not be available." *Id.*

The Court has refined its special factors analysis into a three-part inquiry. Courts must first determine whether the alleged *Bivens* claim presents a new context. "If the case is different in a meaningful way from previous *Bivens* cases decided by *this Court*, then the context is new." *Id.* at 1859 (emphasis added). If the context is new, then "there is the question whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007); *see also Abbasi*, 137 S. Ct. at 1858 (an alternative process "alone may limit the power of the Judiciary to infer a new *Bivens* cause of action"). Finally, in the absence of an alternative process, "a *Bivens* remedy is a subject of judgment: 'the federal courts must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed, however, to any special factors counselling hesitation before authorizing a new kind of federal litigation.'" *Id.* (quoting *Bush v. Lucas*, 462 U.S. 367, 378 (1983)). "[I]f there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy . . . the courts must refrain from creating the remedy in order to respect the role of Congress in determining the nature and extent of federal-court jurisdiction under Article III." *Abbasi*, 137 S. Ct. at 1858.

### A.    Counts Two, Five, and Six raise a new context for *Bivens* purposes.

There is no question the First Amendment claims raise a new *Bivens* context. The Supreme Court has never recognized a First Amendment *Bivens* claim. *See Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012). In this regard, the Court has been quite clear: "a case can present a new context for *Bivens* purposes if it implicates a different constitutional right." *Abbasi*, 137 S. Ct. at 1864. That being said, Counts Two and Five clearly raise a new *Bivens* context.[8]

The same can be said for Count Six, which alleges a Fourth Amendment malicious prosecution claim. While *Bivens* itself involved a Fourth Amendment seizure *in the absence of judicial process, i.e.*, a "claim against FBI agents for handcuffing a man in his own home without a warrant," *id.* at 1860; Count Six challenges a different kind of seizure, one *pursuant to criminal process, i.e.*, a malicious prosecution claim. *See Brunoehler v. Tarwater*, 743 F. App'x 740, 751 (9th Cir. 2018) (seizure pursuant to legal process presents new *Bivens* context) (Bea, J., dissenting). The Supreme Court has never recognized a *Bivens* claim for malicious prosecution. For *Bivens* purposes, "a modest extension is still an extension," even if the new context has "significant parallels to one of the Court's previous *Bivens* cases" and the differences are "perhaps small." *Abbasi*, 137 S. Ct. at 1861, 1864-1865; *see also id.* at 1859 (a context may be considered new "[e]ven though the right and the mechanism of injury [are] the same"). Thus, the context in *Abbasi* (a Fourth Amendment claim related to prison strip searches) was considered new because it was meaningfully different than the context in *Bivens* (a Fourth Amendment claim related to an in-home warrantless search and seizure). *Id.* at 1860.

---

[8] Although the D.C. Circuit has recognized a First Amendment *Bivens* claim, *see Haynesworth v. Miller*, 820 F.2d 1245, 1257 (D.C. Cir. 1987), *abrogated in part by Hartman v. Moore*, 547 U.S. 250 (2006), the new context inquiry is governed by *Supreme Court* precedent, not Circuit precedent. *See Abbasi*, 137 S. Ct. at 1859; *Jangjoo v. Sieg*, 319 F. Supp. 3d 207, 216 (D.D.C. 2018) (McFadden, J.).

Moreover, the Supreme Court in *Abbasi* indicated that a claim might present a new context based on the rank of the officers involved or if judicial precedent provides a less meaningful guide for official conduct. *Id.* Here, Plaintiff sues three former Attorneys General, and former FBI and BLM Directors. In *Abbasi*, challenges to "high-level executive policy" *alone* rendered the context new, and "a special factors analysis was required." *Id.*; *see also Attkisson v. Holder*, No. 18-1677, 2019 U.S. App. LEXIS 8505, *34 (4th Cir. Mar. 21, 2019) (finding context new, in part, because Attorney General Holder "held [a] much  higher rank[] than the line-level FBI agents sued in *Bivens*"). Additionally, while *Bivens* itself involved a warrantless search and arrest, a *Bivens* claim for wrongful prosecution is different and new. A special-factors inquiry is required.

### B.   Special factors counsel hesitation against extending *Bivens* to wrongful prosecution-based claims.

Counts Two, Five, and Six all arise out of the initiation of a criminal prosecution. But a number of safeguards protect a criminal defendant's constitutional rights during the criminal process, including the grand-jury, probable-cause hearings, bond hearings, dismissal motions, jury trials, judgments of acquittal, direct appeals, habeas corpus, and even compensatory schemes. These ample protections "amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages" for wrongful prosecution claims. *Abbasi*, 137 S. Ct. at 1858 (citation omitted).[9]

---

[9] In *Wilkie*, the Court considered whether the remedies available through the criminal justice system counted as a special factor and strongly suggested that those avenues for relief might be a sufficient reason not to create a new constitutional damages claim for malicious prosecution. 551 U.S. at 551-52 ("For each charge . . . Robbins had some procedure to defend and make good on his position. He took advantage of some opportunities, and let others pass; although he had mixed success, he had the means to be heard."). But because the plaintiff had challenged many government acts beyond the simple filing of charges, the Court declined to resolve that issue. *Id.* 551-54. It instead concluded that the proposed *Bivens* claim – alleging that at some point lawful conduct can turn into unconstitutional pressure in violation of due process – was unworkable as a proposed cause of action, and declined to imply a damages remedy. *Id.* at 555-61.

The starting point is the grand jury. *See* U.S. Const. amend V, cl. 1. "[T]he whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people." *United States v. Williams*, 504 U.S. 36, 47 (1992) (citations omitted). It makes an independent finding of probable cause and so protects "against unfounded criminal prosecutions." *United States v. Calandra*, 414 U.S. 338, 343 (1974) (citation omitted); *see also United States v. Mechanik*, 475 U.S. 66, 74 (1986); *United States v. Caruto*, 663 F.3d. 394, 398 (9th Cir. 2011); Fed. R. Crim. P. 6, 7. After indictment, the accused can raise certain pretrial legal challenges to the prosecution. *See* Fed. R. Crim P. 12(b)(3). Rule 12 specifically affords relief from "selective or vindictive prosecution," "an error in the grand-jury proceeding or preliminary hearing," and the use of evidence illegally obtained. *See generally* Fed. R. Crim. P. 12; *see also Mechanik*, 475 U.S. at 75 ("courts have consistently employed the remedy of dismissal of the indictment for deviations" from these rules) (O'Connor, J., concurring) (citation omitted).[10]

The Rules also enshrine the constitutional right to trial by jury, another protection against wrongful prosecution. *See* Fed. R. Crim. P. 23-31; *United States v. Gaudin*, 515 U.S. 506, 510–11 (1995) (jury trials are a necessary protection "against a spirit of oppression" and "great bulwark of [a citizen's] civil and political liberties") (citations omitted). And they allow for mistrial if the defendant was substantially prejudiced during trial, *see* Fed. R. Crim. P. 23, acquittal at the close of the government's case or notwithstanding a guilty verdict, *see* Fed. R. Crim. P. 26.3, additional post-verdict remedies, *see* Fed. R. Crim. P. 32-39, and even a new trial if the "interest of justice so

---

[10] In felony cases initiated by complaint, the defendant is entitled to a timely preliminary hearing. *See* Fed. R. Crim. P. 3, 5.1; *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). Absent a finding of probable cause, the "judge *must* dismiss the complaint and discharge the defendant." Fed. R. Crim. P. 5.1(f) (emphasis added).

requires." Fed. R. Crim. P. 33. Still more, Congress provided appellate remedies to challenge an unlawful detention. Fed. R. App. P. 4(b), Fed. R. App. P. 9. These procedures were formulated "after prolonged, careful and scholarly research." *United States v. Virginia Erection Corp.*, 335 F.2d 868, 870 (4th Cir. 1964).

Additionally, Congress created an alternative existing process for challenging one's detention pursuant to process through the Bail Reform Act. *See* 18 U.S.C. §§ 3141-51. That statute carries a presumption *against* confinement and imposes detention only after "a full-blown adversary hearing," during which the defendant has the right to testify and present and cross-examine witnesses. *United States v. Salerno*, 481 U.S. 739, 750 (1987); 18 U.S.C. § 3142(f). The Bail Reform Act, like the Criminal Rules, was the product of careful Congressional deliberation. The Supreme Court later upheld the Act as constitutional, noting its "extensive [procedural] safeguards," Congress's "careful delineation of the circumstances under which detention will be permitted," and the Government's many regulatory interests. *See Salerno*, 481 U.S. at 751-52.[11]

The Criminal Rules and the Bail Reform Act provide many avenues for challenging one's detention pursuant to process. Congress also decided that *compensation* may be awarded in certain circumstances. First, the Hyde Amendment authorizes a federal court to award a defendant "a reasonable attorney's fee and other litigation expenses" if he is the "prevailing party" and "the position of the United States was vexatious, frivolous, or in bad faith." Pub. L. No. 105-119, § 617, 111 Stat. 2440, 2519 (1997) (codified at 18 U.S.C. § 3006A, historical and statutory notes). Chairman Hyde explained that the bill was intended to remedy prosecutorial misconduct:

---

[11] Relatedly, the federal habeas statutes, 28 U.S.C. § 2241, *et seq.*, establish post-conviction procedures for challenging one's detention. *Abbasi* itself recognized habeas as a significant remedy, emphasizing that "when alternative methods of relief are available, a *Bivens* remedy usually is not." 137 S. Ct. at 1863 (citation omitted).

> What if Uncle Sam sues you, charges you with a criminal violation, even gets an indictment and proceeds, but they are wrong. They are not just wrong, they are willfully wrong, they are frivolously wrong. They keep information from you that the law says they must disclose. They hide information. They do not disclose exculpatory information to which you are entitled. They suborn perjury.

143 Cong. Rec. H7786-04, H7791 (Sept. 24, 1997) (statement of Rep. Hyde). The bill sought to strike "the proper balance" of "deter[ing] unjustifiable governmental conduct" without "inhibit[ing] the aggressive prosecution of justifiable cases." Statement of Honorable Henry J. Hyde before House Rules Committee on Amendment to H.R. 2267, 1997 WL 545756 (Sept. 5, 1997). As Chairman Hyde said in explaining the reasons for his amendment, the law did *not* authorize personal liability and instead "made federal prosecutors immune from the tort of malicious prosecution." *Id.* The Hyde Amendment preserved that balance and instead offered only a limited attorney fee remedy for bad faith prosecutions. Second, Congress enacted the Unjust Conviction and Imprisonment statute to provide further compensation for those wrongfully convicted. 28 U.S.C. § 2513. A person seeking compensation under the Act must present to the Court of Federal Claims a "certificate of innocence" issued by the court that heard the facts leading to the wrongful conviction, and the Court of Federal Claims may award up to $50,000 per year of incarceration or $100,000 per year in capital cases. 28 U.S.C. § 2513(b)&(e).

In short, "[i]nherent in the judicial process are checks that serve to restrain prosecutorial abuse, and any abuse that does occur is subject to various self-remedying mechanisms of the adversarial process." *Grey*, 712 F.2d at 498. Where the government acts maliciously and the defendant prevails, Congress provided for fees and costs. And where the convicted defendant proves his innocence, Congress provided for compensation. What Congress did not create is a personal damages remedy. That reflects Congress's balancing of the need for robust prosecutions against the harm of wrongful convictions. That is the kind of judgment that triggers judicial deference and forecloses creating an additional monetary remedy through judicial implication.

- 22 -

Many of these safeguards came into play in Plaintiff's criminal case. A grand jury and a magistrate judge each found probable cause. Hearings were held where Plaintiff challenged his detention, several motions to dismiss the superceding indictment were filed, and ultimately, Plaintiff secured a dismissal. That he might not have received all the relief he wants is of no moment. As the Supreme Court explained:

> The question is not what remedy the court should provide for a wrong that would otherwise go unredressed. It is whether an elaborate remedial system that has been constructed step by step, with careful attention to conflicting policy considerations, should be augmented by the creation of a new judicial remedy for the constitutional violation at issue. That question obviously cannot be answered simply by noting that existing remedies do not provide complete relief for the plaintiff. The policy judgment should be informed by a thorough understanding of the existing regulatory structure and the respective costs and benefits that would result from the addition of another remedy.

*Bush*, 462 U.S. at 388; *see also Liff v. OIG DOL*, 881 F.3d 912, 921 (D.C. Cir. 2018) ("The question is whether alternative remedies exist, not whether they cover the full breadth of harm that a would-be *Bivens* plaintiff alleges. Even if gaps remain . . . Congress's activity in this area counsels against a judicially created *Bivens* remedy."); *Jangjoo*, 319 F. Supp. 3d at 218 (recognizing Administrative Procedures Act as alternative remedial structure even though it does not provide for damages because under Supreme Court and D.C. Circuit precedent, a "remedial statute need not provide full relief to the plaintiff to qualify as a 'special factor'") (citation omitted).

This is why the Eighth Circuit declined to extend *Bivens* in a wrongful-prosecution case arising out of "outrageous" police conduct. *See Vennes v. An Unknown Number of Unidentified Agents*, 26 F.3d 1448 (1994). There, the plaintiff brought a *Bivens* suit alleging that officers violated his rights "by coercing and entrapping him into committing [various] crimes, thereby causing 'an illegal indictment' to issue." *Id.* at 1449. The court declined to extend *Bivens*, ruling that the plaintiff should have litigated his "allegations of outrageous coercive conduct in the most timely and relevant proceeding, his criminal trial," which is the "process best suited to determining

whether the agents in fact violated his due process rights." *Id.* at 1452-53. The court warned that "[e]xpanding *Bivens*" to the criminal-justice context "would have a chilling effect on law enforcement officers and would flood the federal courts with constitutional damage claims by the many criminal defendants who leave the criminal process convinced that they have been prosecuted and convicted unfairly." *Id.* at 1452.

Two additional special factors warrant consideration here. First is the inclusion of claims against the highest-ranking officials within the Department of Justice, the FBI, and the BLM. *Abbasi* makes clear that extending *Bivens* to such claims is improper. *See* 137 S. Ct. at 1860 ("[A] *Bivens* action is not a proper vehicle for altering an entity's policy.") (internal quotations and citation omitted); *id.* ("*Bivens* is not designed to hold officers responsible for acts of their subordinates."). As the Court explained, allowing such claims to proceed "would necessarily require inquiry and discovery into the whole course of the discussions and deliberations that led to the policies and governmental acts being challenged," and risks preventing future Executive officials "from devoting the time and effort required for the proper discharge of their duties." *Id.* (citations omitted); *see also id.* at 1861 ("Allowing a damages suit in this context, or in a like context in other circumstances, would require courts to interfere in an intrusive way with sensitive functions of the Executive Branch."). The Court concluded: "[t]hese consequences counsel against allowing a *Bivens* action against the Executive Officials." *Id.* at 1860, 1861. Based on this reasoning, *Bivens* should not be extended to any claim against the named Defendants in overseeing and setting forth Executive policy for their respective agencies and sub-agencies. *Cf. Jangjoo*, 319 F. Supp. 3d at 217 (plaintiff's reliance on a *respondeat superior* theory of liability itself is special factor counseling hesitation against implying *Bivens* remedy).

Second, extending *Bivens* to the First Amendment claims is also unwarranted. The Supreme Court has never extended *Bivens* to First Amendment claims, and post-*Abbasi*, this Court has refused to do so in various contexts. *See, e.g.*, *Raven v. Sajet*, 334 F. Supp. 3d 22, 34 (D.D.C. 2018) (declining to recognize First Amendment *Bivens* claim, noting that "damages for constitutional violations are rare") (McFadden, J.); *Storms v. Shinseki*, 319 F. Supp. 3d 348, 353 (D.D.C. 2018) (declining to recognize First Amendment *Bivens* claim, noting that "the Supreme Court has never authorized a damages remedy for a First Amendment violation, and it seems unlikely to do so in the wake of *Abbasi*") (McFadden, J.); *Jangjoo*, 319 F. Supp. 3d at 216 (declining to recognize First Amendment *Bivens* claim, noting that "*Abbasi* counsels that courts should be reluctant to create a damages remedy for any other claims" beyond those recognized in *Bivens, Davis,* and *Carlson*).

That reluctance is with good reason. In *Wilkie*, the Court recognized as a special factor the threat that expanding *Bivens* to a new context might "invite an onslaught of *Bivens* actions." 551 U.S. at 562. That concern applies with particular force to First Amendment retaliation claims where "an official's state of mind is easy to allege and hard to disprove." *Crawford-El v. Britton*, 523 U.S. 574, 584-85 (1985) (internal quotations omitted). The Supreme Court has consistently resisted efforts to embroil the Judiciary in lawsuits over the subjective motive of Executive officials in carrying out official policy. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 737 (2011) ("[W]e have almost uniformly rejected invitations to probe subjective intent."); *Wood*, 572 U.S. at 763-64 (declining to infer department-wide subjective intent based on allegations of misconduct by a few). For these same reasons, retaliation-based claims are a particularly inappropriate subject for implied damages remedies. As *Abbasi* cautioned, when recognizing a new remedy would open the floodgates, the unusual risk of "burden and demand" on officials is heightened and hesitation

against extending *Bivens* is warranted. 137 S. Ct. at 1860; *see also id.* at 1858 (discussing "costs

and consequences to the Government itself" in considering a new *Bivens* claim). That is the very

reason one court declined to extend *Bivens* to a First Amendment retaliatory arrest claim alleging

that officers retaliated against the plaintiff for cursing:

> Judicially imposing First Amendment liability for arresting or searching a cursing suspect would threaten significant disruption of the proper functioning of the executive branch. It would extend the specter of litigation over broad swaths of agents' decision-making in the field, and it would likely increase the costs of enforcing federal law as a general matter.

*Jones v. Hernandez*, No. 16-1986, 2017 U.S. Dist. LEXIS 186300, *29 (S.D. Cal. Nov. 9, 2017)

(citation omitted). Those same concerns apply to First Amendment retaliatory prosecution claims,

especially given how easy it is to allege that a prosecution was based on some impermissible,

retaliatory motive. *See Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008)

("There is almost always a weak inference of retaliation whenever a plaintiff and a defendant have

had previous negative interactions."); *see also Gray*, 712 F.2d at 497 ("[I]t has been noted that a

prosecutor is especially vulnerable to retaliatory litigation.").

For all these reasons, this Court should decline the invitation to extend *Bivens* to wrongful

prosecution-based claims and dismiss Counts Two, Five, and Six with prejudice.

## VI.    Defendants are entitled to qualified immunity on all constitutional tort claims because the complaint fails to sufficiently allege a clearly established constitutional violation.

Independent of the statute of limitations bar, the application of absolute immunity, the

personal participation deficiencies, and the *Abbasi* question, all Defendants are entitled to qualified

immunity on Counts One, Two, Four, Five, and Six because Plaintiff has failed to sufficiently

allege a constitutional violation, let alone a clearly established one.

In individual-capacity suits, "qualified immunity protects government officials from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotations and citation omitted). This protection shields "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986); and applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 231 (internal quotations omitted). Courts ask two questions: first, whether the facts alleged show that the defendant violated a constitutional right; and second, whether that right was clearly established. *Daugherty v. Sheer*, 891 F.3d 386, 390 (D.C. Cir. 2018) (citation omitted), *cert. denied*, No. 18-62, 2019 U.S. LEXIS 1655 (Mar. 4, 2019). Courts can decide which question to answer first. *Pearson*, 555 U.S. at 236. If the facts alleged do not show the violation of a constitutional right, or if that right was not clearly established at the time of the events alleged, the defendant is immune from suit. *Id.* at 243-45.

To determine if the law is clearly established, the D.C. Circuit looks to Supreme Court and D.C. Circuit cases, "as well as to cases from other courts exhibiting a consensus view – if there is one." *Daugherty*, 891 F.3d at 390 (citation omitted). The Supreme Court has also admonished courts "not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.* "Similarly, in the First Amendment context, 'the general right to be free from retaliation for one's speech' may be too broad a proposition, not sufficiently 'particularized' to make out clearly established law." *Daugherty*, 891 F.3d at 390 (citation omitted); *see also Lane v. Franks*, 573 U.S. 228, 243-46 (2014). While the Court does not require "a case directly on point," it has "stressed the need to identify a case where an officer acting under

similar circumstances" was held to violate the law. *See Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (internal quotations omitted). "[A] body of relevant case law is usually necessary," and "[t]he precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* (internal quotations omitted). Finally, it is the plaintiff's burden "to show that the particular right in question – narrowly described to fit the factual pattern confronting the officers – was clearly established." *Dukore v. Dist. of Columbia*, 799 F.3d 1137, 1145 (D.C. Cir. 2015) (citation omitted). This is a "demanding standard." *Wesby*, 138 S. Ct. at 589.

### A.   Count One against Defendants Comey and Kornze fails to allege a clearly established constitutional violation.

In Count One, Plaintiff alleges that his property was searched and seized in violation of the Fourth Amendment, making specific reference to cattle owned by him and his family. Compl. ¶¶ 33, 42-43, 68. It is unclear from the complaint whether the seized cattle actually belonged to Plaintiff or his relatives, or both. It is well-settled that "the Fourth Amendment is a personal right that must be invoked by an individual." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998) (citation omitted). As a personal right, the Fourth Amendment "may not be vicariously asserted." *United States v. Quinn*, 475 U.S. 791, 794 (1986) (citation omitted); *see also Plumhoff v. Rickard,* 572 U.S. 765, 778 (2014). As the D.C. Circuit explained, "Fourth Amendment jurisprudence . . . does not countenance the assertion of another's right to be free from unreasonable searches and seizures." *United States v. Caicedo-Llanos*, 960 F.2d 158, 161-162 (D.C. Cir. 1992). Although sometimes characterized as a standing-to-sue principle, the idea that one may not vicariously assert another's Fourth Amendment rights actually goes to the merits of the claim. *See United States v. Sheffield*, 832 F.3d 296, 304 (D.C. Cir. 2016) ("So understood, Fourth Amendment standing is merely an aspect of the substantive merits of a Fourth Amendment claim, inquiring whether the

party invoking the Amendment has a privacy interest that was invaded."). Here, Plaintiff must assert his *own* privacy interest in the seized cattle, but the Complaint is unclear on this point. Sometimes it refers to the cattle as his and at other times, his relatives. *Compare* Compl. ¶¶ 33, 68 *with id.* ¶¶ 42-43. Plaintiff cannot assert Fourth Amendment claims on behalf of his family members.

Moreover, the Nevada federal court in 2013, after thirteen years of litigation, specifically "authorized the United States to impound any of [Cliven] Bundy's livestock that remained on the property." *Bundy*, 2018 U.S. Dist. LEXIS 116435, at *2. As that court very recently ruled, the impoundment operations on April 12, 2014, were "under the 2013 Order." *Id.* at *2. If Plaintiff or any member of his family wanted to challenge that order, the correct course of action would have been to move to vacate the order in the District of Nevada and seek damages there. That is precisely what Cliven Bundy tried to do just last year. He filed a motion to vacate the 2013 order and sought damages for the destruction of over 40 cattle, presumably the same cattle over which Plaintiff now seeks damages in this Court. Mr. Bundy lost. The court ruled that the claims relating to the 2013 order and the seizure of cattle were untimely. *Id.* at *4-7. In moving to vacate the 2013 order, Mr. Bundy argued that the government's "failed attempt to carry out the impoundment operations demonstrates that the 2013 order is stale and impossible to execute." *Id.* at *11. The court found it rather brazen that Mr. Bundy would move to vacate the 2013 order on "impossible to execute" grounds given that the *reason* the United States was unable to execute the 2013 order was because Mr. Bundy interfered with the operation in defiance of the court's instructions. *Id.* at *11-12. In any event, Plaintiff should not be allowed to collaterally attack the 2013 order here, which is precisely what Count One seeks to do – and certainly not four-and-a-half years after the seizure.

But the Court need not necessarily decide whether the 2013 order controls or binds Plaintiff here. The Court can simply take judicial notice of the fact that another court ordered that the United States was authorized to seize the Bundy cattle to justify the application of qualified immunity. Indeed, where an alleged Fourth Amendment violation involves a seizure pursuant to a warrant, the fact that a neutral magistrate ordered the seizure "is the clearest indication that the officers acted in an objectively reasonable manner." *See Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012); *see also Brunson v. Murray*, 843 F.3d 698, 709 (7th Cir. 2016) ("The officer does not personally violate the Constitution by making the arrest the court has authorized."). The same applies to civil enforcement orders authorizing similar seizures. At the very least, that a judicial officer held that the United States was authorized to seize the cattle in question cements the entitlement to qualified immunity on the second prong of the analysis as it certainly cannot be said that every reasonable officer would have understood that carrying out a court-authorized seizure violates clearly established law.[12]

### B.   Counts Two, Five, and Six against all Defendants fail to allege a clearly established constitutional violation.

The complaint also fails to sufficiently plead wrongful prosecution-based claims. To state a malicious prosecution claim, a plaintiff must allege that (1) the defendant instituted criminal proceedings against the plaintiff; (2) the proceedings terminated in favor of the plaintiff; and (3) a predicate constitutional violation occurred as a result of the proceedings. *See Sherrod v. McHugh*, 334 F. Supp. 3d 219, 251 (D.D.C. 2018); *Alehegn Mehari v. Dist. of Columbia*, 268 F. Supp. 3d 73, 81-82 (D.D.C. 2017). Also, because malicious prosecution is actionable under the Fourth

---

[12] Even if the Court were to somehow disagree with the District of Nevada's conclusion that the seizure was authorized, that alone justifies the application of qualified immunity. *See Wilson v. Layne*, 526 U.S. 603, 618 (1999) (where judges disagree on constitutional question, it is unfair to subject individuals to money damages for picking the losing side of the controversy); *al-Kidd*, 563 U.S. at 743 (same).

Amendment, a plaintiff must also allege "that the defendant's actions cause[d] the plaintiff to be unreasonably seized without probable cause." *Id.* (citation and quotations omitted).[13]

To state a retaliatory prosecution claim, a plaintiff must allege that (1) the conduct allegedly retaliated against was constitutionally protected; (2) the government's bringing of the criminal prosecution was motivated at least in part by a purpose to retaliate for that conduct; and (3) the government lacked probable cause to bring the criminal prosecution. *See Moore v. Hartman*, 644 F.3d 415, 420 (D.C. Cir. 2011) (citation omitted), *vacated by Hartman v. Moore*, 567 U.S. 901 (2012), *reinstated by Moore v. Hartman*, 704 F.3d 1003 (D.C. Cir. 2013).

To begin, the malicious prosecution claim is independently subject to dismissal because the criminal proceedings have not yet terminated. *See Shulman v. Miskell*, 626 F.2d 173, 174 (D.C. Cir. 1980) ("At common law and in jurisdictions everywhere in the United States termination of the underlying criminal or civil proceeding in favor of the defendant is an essential element of a malicious prosecution action."); *see also Sherrod*, 334 F. Supp. 3d at 251; *Alehegn Mehari*, 286 F. Supp. 3d at 82; *Thorp v. Dist. of Columbia*, 142 F. Supp. 3d 132, 146-47 (D.D.C. 2015). Here, the complaint alleges that the district court dismissed all criminal charges with prejudice, but also that the United States appealed that order. Compl. ¶¶ 51, 112. Courts have recognized the obvious point

---

[13] In Count Six, the complaint makes reference to a Fourteenth Amendment right against malicious prosecution. Compl. ¶ 107. As a threshold matter, any claim under the Fourteenth Amendment fails because the required State action is lacking. *Dist. of Columbia v. Carter*, 409 U.S. 418, 423 (1973) ("[T]he commands of the Fourteenth Amendment are addressed only to the State or to those acting under color of its authority."). Moreover, the Supreme Court has made clear that any right against malicious prosecution is governed by the Fourth Amendment, *not* the due process clauses of the Fifth and Fourteenth Amendments. *See Manuel v. City of Joliet*, 137 S. Ct. 911, 920 (2017); *Albright v. Oliver*, 510 U.S. 266, 273-95 (1994) (plurality); *see also Pitt v. Dist. of Columbia*, 491 F.3d 494, 510-11 (D.C. Cir. 2007); *Jiggetts v. Cipullo*, 285 F. Supp. 3d 156, 166 (D.D.C. 2018). And so any malicious prosecution claim purporting to arise under the Fourteenth Amendment fails to state a valid claim.

that criminal proceedings have not yet terminated where an appeal is pending.[14]

Beyond that, all three retaliatory and malicious prosecution claims are subject to dismissal because probable cause existed to initiate criminal proceedings. *See Moore v. Hartman,* 571 F.3d 62, 66 (D.C. Cir. 2009) ("The lack of probable cause is an essential element in both retaliatory prosecution and malicious prosecution claims."). The Supreme Court recently summarized the probable cause standard:

> To determine whether an officer had probable cause for an arrest, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. Because probable cause deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules. It requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. Probable cause is not a high bar.

*Wesby*, 138 S. Ct. at 586 (internal quotations and citations omitted). Even where probable cause is lacking, an officer is entitled to qualified immunity if he "reasonably but mistakenly conclude[d] that probable cause [wa]s present." *Id.* at 591 (citation omitted).

Plaintiff was charged, in pertinent part, with (1) conspiracy to threaten, assault, and impede a federal officer; (2) use of a firearm during a crime of violence, and (3) aiding and abetting. *See Bundy*, 2:16-cr-46 (D. Nev.) (ECF 27) (Ex. 2). We describe each class of charges in turn. *First*, assault on a federal officer is a general intent crime; the defendant's state of mind is irrelevant. *See*

---

[14] *See Atcha v. Indiana*, No. 15-110, 2015 U.S. Dist. LEXIS 150853, *13 (N.D. Ind. Nov. 6, 2015) ("[I]f an appeal is pending . . . . the original action is clearly not yet terminated and [the] claim of malicious prosecution will be dismissed."); *Dains v. Maricopa Cty.*, No. 07-2606, 2008 U.S. Dist. LEXIS 130808, *11 (D. Ariz. June 12, 2008) ("Because the appeal is still pending, the criminal case against plaintiffs has not yet terminated in their favor. [The] malicious prosecution claim is thus premature and must be dismissed."); *Dole Food Co. v. Gutierrez*, No. 03-9416, 2004 U.S. Dist. LEXIS 28429, *39 (C.D. Cal. July 13, 2004) ("Given that the . . . appeal of that decision is pending, [plaintiff] cannot plead a favorable termination of the underlying proceeding."); *see also CAT Internet Servs. v. Magazines.com, Inc.*, No. 00-2135, 2001 U.S. Dist. LEXIS 8, *19 (E.D. Pa. Jan. 4, 2001) ("This is the view adopted by the Restatement and by the majority of jurisdictions deciding this issue."); Restatement (Second) of Torts § 659 comment f (1977).

*United States v. Feola*, 420 U.S. 671, 686 (1975); *United States v. Kleinbart*, 27 F.3d 586, 592 (D.C. Cir. 1994). To incur criminal liability, "an actor must entertain merely the criminal intent to do the acts therein specified." *Id.* "The only issue would be whether a reasonable man would find that the defendant's actions should have put a federal officer in apprehension of bodily harm." *United States v. Jim*, 865 F.2d 211, 212-13 (9th Cir. 1989) (quoting *United States v. Staggs*, 553 F.2d 1073, 1076 (7th Cir. 1977)). *Second*, to incur criminal liability for using a firearm during a crime of violence, the person need only have "brandished" the firearm, which is statutorily defined to mean to "display all or part of the firearm, or otherwise make the presence of the firearm known to another person, in order to intimidate that person, regardless of whether the firearm is directly visible to that person." 18 U.S.C. § 924(c)(iii)(D)(ii)(4). Thus, the firearm need not be pointed directly at the victim for criminal liability to attach. *Id.*; *United States v. Scott*, 74 F.3d 175, 178 (9th Cir. 1996) (simply holding firearm in hand sufficient brandishing); *United States v. Nesbitt*, 669 F. App'x 534, 535 (11th Cir. 2016) (same, even where defendant did not wave, swing, flaunt, or point gun at victim). *Third*, these charges were pled along with conspiracy and aiding and abetting allegations, meaning that Plaintiff need not have actually committed the substantive offenses himself for criminal liability to attach. *See Pinkerton v. United States*, 328 U.S. 640, 646-48 (1946) (explaining elements of criminal conspiracy); *see also United States v. Gonzalez*, 121 F.3d 928, 937-38 (5th Cir. 1997) (defendant liable for co-conspirator's possession of weapon even if defendant was unaware of the firearm); *United States v. Washington*, 106 F.3d 1488, 1490 (9th Cir. 1997) (defendant liable for use of firearm where only co-conspirator displayed weapon).

In short, as long as an objectively reasonable person could have believed that any one of the armed Bundy supporters was there to impede law enforcement or place a reasonable officer in apprehension of bodily harm and Plaintiff provided *any assistance*, probable cause existed to

charge him – even if Plaintiff did not himself point a weapon or assault, threaten, or impede a federal officer. Qualified immunity also allows for reasonable mistakes. *See Wesby*, 138 S. Ct. at 591. So unless *every reasonable officer* would have found no probable cause on the facts alleged, qualified immunity applies. *Id.* at 589.

Here, the complaint alleges that the Bundy supporters descended onto the scene to protest the operation and the situation led to an armed "standoff" during which they pointed their guns at federal officers. Compl. ¶¶ 16, 29, 34-38. Plaintiff was also present and armed. *Id.* ¶¶ 17-18, 34. That is more than a sufficient basis on which to conclude that probable cause existed to charge Plaintiff for his admitted participation in the standoff. Plaintiff alleges he was only there to protest, but his intent is irrelevant. As long as the Bundy supporters' conduct – arriving *en masse* and armed – would place a reasonable officer in apprehension of bodily harm, probable cause existed to charge them *and* those who assisted them. Plaintiff also alleges he and the supporters acted in self-defense. But it is well settled that the existence of some evidence suggesting self-defense is an issue for the criminal trier of fact; it does not negate probable cause for the initiation of proceedings. *Yousefian v. City of Glendale*, 779 F.3d 1010, 1014 (9th Cir. 2015) ("The mere existence of some evidence that could suggest self-defense does not negate probable cause."); *see also Brunson*, 843 F.3d at 709.

Based on the foregoing, the complaint's allegations alone are sufficient to determine that probable cause existed to initiate proceedings. But even if not, it is well settled that a grand jury indictment creates a presumption of probable cause. *Moore*, 571 F.3d at 67 (collecting cases). The presumption can only be overcome by specific allegations that the indictment was "produced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Id.* at 69. The presumption also applies to independent findings of probable cause by a neutral

magistrate judge. *See Awabdy v. City of Adelanto*, 368 F.3d 1062, 1037 (9th Cir. 2004) ("In California, *as in virtually every other jurisdiction*, it is a long-standing principle of common law that a decision by a judge or magistrate to hold a defendant to answer after a preliminary hearing constitutes prima facie – but not conclusive – evidence of probable cause.") (emphasis added); *see also* Restatement (Second) of Torts § 663 (1977). "[A] plaintiff's account of the incident in question, by itself, does not overcome the presumption of independent judgment." *Sloman v. Tadlock*, 21 F.3d 1462, 1474 (9th Cir. 1994); *see also Newman v. Cty. of Orange*, 457 F.3d 991, 995 (9th Cir. 2006). Otherwise, any plaintiff could overcome the presumption on a bare allegation of innocence. *See Cotto v. Pabon*, No. 07-7656, 2008 U.S. Dist. LEXIS 94564, *53-55 (S.D.N.Y. Nov. 20, 2008) (collecting cases) ("That is not the state of the law, nor should it be."). Inconsistencies in the evidence are also insufficient; instead, to overcome the presumption of probable cause, a plaintiff must identify knowingly false or fabricated facts that caused the indictment to issue. *See Collins v. City of Colton*, 747 F. App'x 467, 470 (9th Cir. 2018); *see also Cotto*, 2008 U.S. Dist. LEXIS 94564, at *55 ("The fact that [Plaintiff's] version of the incident contradicts that of the officers is not enough to present an issue of fact as to the probable cause element of [the] malicious prosecution claim.").

Here, a grand jury indicted Plaintiff. And a magistrate judge independently held a hearing, heard arguments that Plaintiff and the Bundy supporters were only at the standoff to protest, reviewed evidence showing the supporters and the officers all pointing guns at each other, and *still concluded* that "[a] reasonable interpretation of [the evidence] was that [Ryan Bundy] and his associates would use force to resist the BLM's impoundment efforts." *Bundy*, 2017 U.S. Dist. LEXIS 17838, at *12-13, 16. The whole point of the presumption of probable cause is to avoid routine litigation (or here, relitigation) in civil court of the basis for criminal charges. That is why

courts require something more to overcome the presumption, *i.e.*, an allegation with sufficient supporting factual content that the indictment was induced by knowingly false or fabricated evidence or other such misconduct. The complaint makes no such allegation here. It makes passing reference to the indictment and wholly ignores the magistrate judge's findings. It alleges in conclusory fashion that the allegations against Plaintiff were "known to be false," Compl. ¶ 111; but it never specifies what the false information was, who had knowledge of it, whether it was provided to the grand jury or the magistrate judge, and how or whether it was material to the finding of probable cause. That is plainly insufficient. A plaintiff cannot show an entitlement to relief on a prosecution-based claim with a bare legal conclusion that probable cause was lacking. *See Cairns v. Cty. of El Dorado*, 694 F. App'x 534, 535-36 (9th Cir. 2017) (conclusory allegation that plaintiffs were "unfairly and unlawfully" prosecuted insufficient); *see also Lewis v. City of New York*, 591 F. App'x 21, 22 (2d Cir. 2015) ("conclusory allegations are insufficient to counter the presumption of probable cause," particularly where plaintiff was a party to underlying criminal proceeding and should have no problem explaining what evidence was false or fabricated); *Washington v. White*, No. 18-333, 2018 U.S. Dist. LEXIS 147605, *2-8 (C.D. Cal. Aug. 28, 2018) (dismissing malicious prosecution claim for failing to identify what facts were knowingly false or fabricated to overcome presumption of probable cause); *Lacey v. Yates Cty.*, 30 F. Supp. 3d 213, 224 (W.D.N.Y. 2014) ("District courts have not hesitated to dismiss malicious prosecution claims that fail to rebut the presumption of probable cause that arises from a grand jury indictment."). And Plaintiff's own version of events denying that he threatened anyone is also insufficient to

overcome the presumption as a matter of law. *See Newman*, 457 F.3d at 995; *Sloman*, 21 F.3d at 1474; *Cotto*, 2008 U.S. Dist. LEXIS 94564, at *53-55.[15]

In the end, the facts alleged show the existence of probable cause. If not, Plaintiff fails to allege specific facts sufficient to overcome the presumption of probable cause created by the grand jury indictment and the magistrate judge's findings. His failure to do so is enough to defeat all three prosecution-based claims. At the very least, that a magistrate judge found probable cause demonstrates that Defendants are entitled to qualified immunity on the second prong of the analysis. Indeed, where a judicial officer independently finds probable cause on these very facts, and rejects the same allegations Plaintiff advances here – that the protest was intended to be peaceful – it cannot be said that every reasonable officer would have concluded otherwise. Having failed to allege a constitutional violation, let alone a clearly established one, Defendants are entitled to qualified immunity on Counts Two, Five, and Six.

**C.     Count Four against Defendants Comey and Kornze fails to allege a clearly established constitutional violation.**

As part of his excessive force claim, Plaintiff alleges that federal officers threatened his family, assaulted his aunt, tased his brother, tackled another brother, and pointed guns at the Bundy

---

[15] The complaint does mention a "live video feed" of the Bundy ranch that allegedly contained exculpatory and impeachment evidence. Compl. ¶¶ 46 f., 55-56. The alleged withholding of this evidence by unnamed BLM agents is insufficient to overcome the presumption of probable cause. That is because prosecutors have no duty to present exculpatory evidence to a grand jury. *United States v. Williams*, 504 U.S. 36, 54 (1992); *see also Moore v. Hartman*, 102 F. Supp. 3d 35, 117 (D.D.C. 2015) ("[N]o legal requirement obliges prosecutors to include exculpatory information in presentations to the grand jury."). Instead, where those courts have held that exculpatory evidence might be relevant to rebut the probable-cause presumption, the alleged exculpatory evidence must completely "obviate probable cause." *See Haupt v. Dillard*, 17 F.3d 285, 290 n.5 (9th Cir. 1994), *as amended* (Apr. 15, 1994). Here, Plaintiff makes no attempt to allege what the alleged exculpatory evidence shows, who withheld it, whether any of the named Defendants had knowledge of it and when, or how it completely obviates probable cause as to him. To the contrary, the district court in the criminal case reviewed the live video feed and concluded it was only "*potentially* exculpatory;" it never found that it completely obviated probable cause for Plaintiff or anyone else. *See Bundy*, No. 16-cr-46 (ECF 3049, at 8-9) (emphasis added) (Ex. 5 - Transcript).

supporters. Compl. ¶¶ 28, 30, 32, 36-38. As explained previously, Plaintiff cannot assert Fourth

Amendment violations on behalf of his family or any other third party. *See supra*, at 28-29. Thus,

any attempt to assert such claims on behalf of his father, his brothers, his aunt, or any of the armed

supporters, does not state a claim, and certainly not a clearly established one.[16]

To the extent Plaintiff is alleging that certain unnamed officers pointed their guns at the

*general direction* of the protesters, including Plaintiff, that claim still fails as a matter of law, even

if Defendants Comey and Kornze directed the conduct. It appears no Supreme Court or D.C.

Circuit precedent holds that pointing a gun at a group of armed individuals during an escalating

standoff violates the Fourth Amendment. To be sure, "several federal courts of appeals have held

that it was objectively unreasonable for officers to point their weapons at unarmed, nonviolent,

and cooperative detainees – particularly if the detainees are children." *S.H. v. Dist. of Columbia*,

270 F. Supp. 3d 260, 293 & n.6 (D.D.C. 2017) (collecting cases). But none of those cases are on

point because none involved officers pointing their guns at a large group of *armed* adults during

an escalating standoff. *See Fisher v. City of San Jose*, 558 F.3d 1069, 1081 (9th Cir. 2009) (en

banc) (disagreeing "with the notion that police are constitutionally required to withdraw from an

active armed standoff"). In fact, a recent Ninth Circuit case demonstrates why qualified immunity

applies on these facts. *See Thompson v. Rahr*, 885 F.3d 582 (2018), *cert. denied Thompson v.*

*Copeland,* 139 S. Ct. 381 (2018). In that case, the court held that pointing a gun at a cooperating

---

[16] Count Four also makes reference to a Fourteenth Amendment right against excessive force.
Compl. ¶¶ 87-88, 90. As discussed in note 13, any claim under the Fourteenth Amendment
necessarily fails because the required State action is lacking. *Carter*, 409 U.S. at 423. Further, the
Supreme Court has made clear that any right against excessive force in the context of a non-
custodial seizure is governed by the Fourth Amendment, *not* the due process clauses of the Fifth
and Fourteenth Amendments. *See Graham v. Connor*, 490 U.S. 386, 394-95 (1989); *Chavez v.*
*Martinez*, 538 U.S. 760, 773 n.5 (2003). And so any excessive force claim purporting to arise
under the Fourteenth Amendment fails to state a valid claim.

suspect's head and threatening to kill him violates the Fourth Amendment, but citing the Supreme Court's recent decision in *White v. Pauly*, 137 S. Ct. 548 (2017), the court further held that the violation was *not* clearly established. *Thompson*, 885 F.3d at 586-90. That is because when the officer drew his gun, the situation was "fluid" and "dangerous," and "critically, [the suspect] was within seconds of a firearm." *Id.* at 588, 590. Based on those facts, the court held that not "every reasonable police officer would have known that [the alleged] conduct was unconstitutional under these circumstances," and thus, "there was not a clearly established constitutional violation." *Id.* at 590. If it was not clearly established that pointing a gun at one cooperating adult *near* a weapon violates the Fourth Amendment, it certainly cannot be said that every reasonable officer would have understood that pointing a gun at a group of *armed* adults engaged in a standoff with federal officers violates the Fourth Amendment.

Moreover, the district court in the criminal case rejected the argument that the officers used excessive force during the standoff when it denied a request by the criminal defendants to assert a self-defense theory: "The pointing of the weapon when people are not cooperating and obeying legitimate orders and directions to leave the area, to move back, and so forth, that could not be excessive force." *Bundy*, No. 2:16-cr-46 (ECF 2267, at 126:18-21) (Ex. 6 - Excerpted Transcript); *see also id.* at 127:1-4 ("[S]o the Court can't find that it's subjectively reasonable to define the force used as being excessive or that there's any evidence that the jury could reasonably find that there was excessive force."). That the judge found no excessive force on these very facts cements the entitlement to qualified immunity, even if this Court somehow disagrees with that conclusion. *See supra* note 12. In sum, the only force used is that officers pointed their guns at a group of armed adults during an escalating standoff. Absent any Supreme Court or D.C. Circuit cases (or a consensus of other case law) clearly establishing that every reasonable official would have

understood that the Fourth Amendment prohibits such conduct, Defendants Comey and Kornze are entitled to qualified immunity on Count Four.

## VII. The RFRA claim fails to state a claim on which relief can be granted.

Count Three asserts a RFRA claim arising out of the prosecution of Plaintiff. There are two problems with this claim. First, the claim lacks merit. Second, RFRA does not authorize damages suits against federal officers in their individual capacities.

### A. The RFRA claim fails on the merits.

RFRA provides that the "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability" unless the challenged conduct is (1) "in furtherance of a compelling government interest;" and (2) "the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000bb-1. A substantial burden is one that "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs . . . [or] force[s] her to choose between following the precepts of her religion and forfeiting benefits, on the one hand, and abandoning one of the precepts of her religion in order to accept work, on the other hand." *Kaemmerling v. Lappin*, 553 F.3d 669, 678 (D.C. Cir. 2008) (internal quotations and citations omitted). A bare allegation that government conduct substantially burdens a person's religious exercise is a legal conclusion that is not entitled to an assumption of truth. *Id.* at 679. Instead, a plaintiff must allege sufficient *facts* from which a court can plausibly conclude that a substantial burden exists. *Id.*

It is unclear whether RFRA applies here at all. RFRA is directed toward neutral rules of general applicability, not intentional acts of religious animus as Plaintiff alleges here. *Fazaga v. FBI*, No. 12-56867, 2019 U.S. App. LEXIS 6028, *87-88 (9th Cir. Feb. 28, 2019) ("[M]any of [the] allegations relate not to neutral and generally applicable government action, but to conduct motivated by intentional discrimination."). RFRA imposes a compelling interest test for free

exercise violations resulting from neutral rules of general applicability. But as the Ninth Circuit recently explained, where the government allegedly acts with religious animus, the compelling interest test already applies, and in those circumstances, reliance on RFRA becomes unnecessary, and the Act, inapplicable. *Id.*

Assuming RFRA does have some applicability here, no civil cases appear to rely on RFRA to remedy allegations of retaliatory prosecution. As this is an issue of first impression, it begs for the application of qualified immunity on the second prong of the analysis as no precedent exists to place an officer on notice that an alleged retaliatory prosecution might trigger RFRA liability. *See White*, 137 S. Ct. at 552 (where case presents unique set of facts and circumstances, "[t]his alone should have been an important indication . . . that [officer's] conduct did not violate a 'clearly established' right"); *Hill v. Borough of Kutztown*, 455 F.3d 225, 244 n.27 (3d Cir. 2006) (where issue is one of first impression, "then, the law was not clearly established"); *Cavallaro v. City of Edmondson*, 44 F. App'x 70, 71 (8th Cir. 2002) ("[O]ur decision would be a matter of first impression and thus it could not be said that the law was clearly established.").

Turning to the first prong of the qualified-immunity analysis, Plaintiff still fails to state a claim. In the criminal context, courts have held that the initiation of criminal proceedings *alone* cannot be a substantial burden on religious exercise under RFRA. As one court explained: "[I]f the mere fact of prosecution were enough to trigger a substantial burden, every criminal Defendant raising a RFRA claim would be able to succeed on this element, rendering the substantial burden portion of the RFRA test superfluous in criminal cases. Nothing in RFRA or the case law supports this conclusion." *United States v. Jeffs*, No. 2016 U.S. Dist. LEXIS 158676, *20-21 (D. Utah Nov. 15, 2016); *see also United States v. Dillard*, 884 F. Supp. 2d 1177, 1183 (D. Kan. 2012) (if defendant violated a criminal statute, "the government's institution of the present action does not

substantially burden [his] legitimate rights under RFRA"). Instead, courts in the criminal context focus on the underlying criminal statute and ask whether compliance with the criminal law creates a substantial burden. Plaintiff here would be hard pressed to argue that being forced to comply with criminal laws prohibiting him from assaulting a federal officer or brandishing a weapon during a crime of violence somehow violates his religious beliefs. But even if those laws did create a substantial burden on his religious exercise, there is no question that the government has a compelling interest in investigating and prosecuting violent crimes. *See Schall v. Martin*, 467 U.S. 253, 264 (1984) ("The legitimate and compelling state interest in protecting the community from crime cannot be doubted.") (internal quotations omitted); *Kaemmerling*, 553 F.3d at 680 (government has a compelling interest in "accurately and expeditiously solving past and future crimes in order to protect the public and ensure conviction of the guilty"); *In re Grand Jury Empaneling*, 171 F.3d 826, 832 (3d Cir. 1999) ("[T]he duty to prosecute persons who commit serious crimes is part and parcel of the government's paramount responsibility for the general safety and welfare of all its citizens.") (internal quotations omitted); *United States v. Davis*, 657 F. Supp. 2d 630, 652 (D. Md. 2009) ("It should go without saying that the government has a powerful and compelling interest in apprehending and prosecuting those who have committed violent crimes."); *United States v. Meixner*, 128 F. Supp.2d 1070, 1075 (E.D. Mich. 2001) ("It is beyond question that the state has a compelling interest to protect its citizens and investigate crimes."). And in virtually every instance where a court has found a compelling interest in the enforcement of an underlying criminal law, the court has also found that the initiation of criminal proceedings was the least restrictive means of furthering that compelling interest. *See, e.g.*, *United States v. Anderson*, 854 F.3d 1033, 1037-38 (8th Cir. 2017) (government has compelling interest in mitigating risks of heroin, and prosecution is least restrictive means); *United States v. Christie*,

825 F.3d 1048, 1057, 1063 (9th Cir. 2016) (same with respect to cannabis); *United States v. Epstein*, 91 F. Supp. 3d 573, 585 (D.N.J. 2015) (government "unquestionably" has compelling interest in uniformly applying kidnapping laws, and prosecution is least restrictive means), *aff'd by United States v. Stimler*, 864 F.3d 253, 268 (3d Cir. 2017) ("The defendants fail to cite, nor can we identify, any cases in which any court has allowed RFRA to shield individuals in the commission of violent crimes."), *reheard on Fourth Amendment issue by United States v. Goldstein*, 914 F.3d 200 (3d Cir. 2019).

Based on the foregoing, Plaintiff has failed to state a RFRA violation, and certainly not a clearly established one. Defendants are accordingly entitled to qualified immunity as to Count Three under both prongs of the qualified-immunity analysis.

### B.    RFRA does not authorize personal damages suits against federal officers.

Even if Count Three did state a RFRA claim, the Act does not authorize personal damages suits against federal officers in their individual capacities. RFRA itself makes no specific mention of a damages remedy against federal officers. Its private right of action provision states in its entirety:

> A person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain *appropriate relief* against a government. Standing to assert a claim or defense under this section shall be governed by the general rules of standing under article III of the Constitution.

42 U.S.C. § 2000bb-1(c) (emphasis added). "Government" means "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States, or of a covered entity." 42 U.S.C. § 2000bb-2(1). Although some courts have held that "appropriate relief" includes a personal-capacity damages remedy against federal officers, *see Tanvir v. Tanzin*, 889 F.3d 72 (2d Cir. 2018); *Mack v. Loretto*, 839 F.3d 286 (3d Cir. 2016); *Patel v. BOP*, 125 F.

Supp. 3d 44 (D.D.C. 2015); RFRA's text and Congress's past practice when creating personal damages liability for violations of federal statutory rights suggest otherwise.

As Judge Jacobs explained in his dissent from the denial of rehearing en banc in *Tanvir*, just as the phrase "appropriate relief" in RFRA has been held not to waive the sovereign immunity of the United States such that it can be subject to money damages, *see, e.g.*, *Webman v. BOP*, 441 F.3d 1022, 1026 (D.C. Cir. 2006), the phrase should also not be held to subject federal officers to money damages *personally*. *Tanvir v. Tanzin*, No. 16-1176, 2019 U.S. App. LEXIS 4519, *10-11 (2d Cir. Feb. 14, 2019) (Jacobs, J., joined by Cabranes and Sullivan, J.J., dissenting from the denial of rehearing *en banc*). Judge Jacobs continued: "If a statute imposes personal damages liability against individual federal officers, one would expect that to be done explicitly, rather than by indirection, hint, or negative pregnant. There is no such explicit wording in RFRA because the manifest statutory purpose has nothing to do with such a remedy." *Id.* at *12. This point is buttressed by the fact that RFRA was intended to restore the compelling interest test previously thought applicable to free-exercise claims and not to expand the ability of a claimant to obtain relief in a manner inconsistent with the Supreme Court's free exercise jurisprudence. *See supra* note 5. The Supreme Court has never authorized a damages action for free exercise claims, and as this Court recognized, it likely never will. *See Storms*, 319 F. Supp. 3d at 353. This Court should follow the dissent in *Tanvir* and conclude that RFRA does not authorize a personal damages remedy against federal officers.[17]

---

[17] Congress has demonstrated it knows how to create a personal damages remedy when it wants. For example, 42 U.S.C. § 1985's remedial provision authorizes "an action for the recovery of damages." 42 U.S.C. § 1985. The Foreign Intelligence Surveillance Act permits the "recovery[] . . . [of] actual damages." 50 U.S.C. § 1810. The Telecommunication Act specifies that a court "may award damages." 47 U.S.C. § 605(e)(3). The Federal Wiretap Act provides for "appropriate relief" but includes within that phrase "damages." 18 U.S.C. § 2520(b). The Foreign Sovereign Immunities Act authorizes victims to recover "money damages" from an official, employee, or

## CONCLUSION

For all these reasons, the Court should grant the motion to dismiss the complaint in its

entirety against all Defendants, with prejudice, and end this case.

Respectfully submitted this 28th day of March 2019.

JOSEPH H. HUNT
Assistant Attorney General
Civil Division

C. SALVATORE D'ALESSIO, JR.
Acting Director, Torts Branch
Civil Division

RICHARD MONTAGUE
Senior Trial Counsel, Torts Branch
Civil Division

s/ Siegmund F. Fuchs
SIEGMUND F. FUCHS
(D.C. Bar # 986828)
Trial Attorney, Torts Branch
Civil Division
U.S. DEPARTMENT OF JUSTICE
Ben Franklin Station, P.O. Box 7146
Washington, D.C. 20044-7146
(202) 616-4322 (phone)
siegmund.f.fuchs@usdoj.gov

Attorneys for Defendants

---

agent of a foreign state, and provides that relief "may include economic damages." 28 U.S.C. §
1605A(c). The federal RICO statute and the Anti-terrorism Act both specify that an injured party
may "recover threefold the damages." 18 U.S.C. § 1964(c); 18 U.S.C. § 2333(a). The Torture
Victim Protection Act establishes a private right of action to recover "damages from an individual
who engages in torture or extrajudicial killing." Pub. L. 102-256, March 12, 1992, 106 Stat. 73.
Even the older-vintage language of Section 1983 (the Civil Rights Act of 1871), which also uses
the phrase "appropriate relief," defines it to include "an action at law," which is to say, damages.
*See Teamsters v. Terry*, 494 U.S. 558, 570 (1990) ("[A]n action for money damages was the
traditional form of relief offered in the courts of law.") (internal quotation marks and citation
omitted).

- 45 -