# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RYAN BUNDY**, <br><br> Plaintiff, <br><br> v. <br><br> **JEFFERSON B. SESSIONS, III,** *et al*., <br><br> Defendants. | Case No. 1:18-cv-02520 (TNM) |

## MEMORANDUM OPINION

Ryan Bundy and his family participated in an armed confrontation with federal agents in Bunkerville, Nevada, in 2014. Federal authorities later arrested and indicted Mr. Bundy based on his involvement in the standoff. A district judge eventually declared a mistrial in that case.

Now, he is suing five high-ranking federal officials for conduct relating to the armed confrontation and ensuing criminal proceeding. For the reasons that follow, the Defendants' Motion to Dismiss will be granted, and the Complaint will be dismissed.

## I.

As it must at this stage, the Court sets out the facts in the light most favorable to Mr. Bundy. *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). According to the Complaint, state and federal officers "invaded" the Bundy Ranch in Bunkerville, Nevada, "under the guise of collecting grazing fees, an alleged and unverified debt." Compl., ECF No. 1 at 4. Carrying a "side-arm," Mr. Bundy participated in the ensuing standoff between these officers and his "supporters." *Id.* According to the Complaint, Mr. Bundy and his confederates did not harm or threaten any state or federal officers. *Id.*

Nonetheless, a federal grand jury later indicted Mr. Bundy on charges related to the standoff. *Id.* The district court eventually declared a mistrial based on prosecutorial misconduct. *Id.* at 13.[1]

Mr. Bundy now sues former Attorneys General Jefferson Sessions, Eric Holder, and Loretta Lynch; former Federal Bureau of Investigation Director James Comey; and former Director of the Bureau of Land Management Neil Kornze (collectively "Senior Officials"), for their alleged parts in the standoff and ensuing prosecution. Mr. Bundy brings six claims: (1) unconstitutional search and seizure claim against Directors Comey and Kornze under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971); (2) unconstitutional retaliation claim against the Senior Officials under *Bivens*; (3) violation of the Religious Freedom Restoration Act ("RFRA") claim against the Senior Officials; (4) unconstitutional use of force claim against Directors Comey and Kornze under 28 U.S.C. § 1983; (5) unconstitutional retaliation claim against the Senior Officials under Section 1983; and (6) unconstitutional malicious prosecution claim against the Senior Officials under Section 1983. *See generally* Compl. at 13–20.

## II.

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires that a complaint raise "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facts that are "merely

---

[1] The United States appealed that order of dismissal, and that appeal is still pending. *See United States v. Bundy*, No. 18-10287 (9th Cir.).

consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 545–46. Thus, a court does not accept the truth of legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

Courts must construe a complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pleaded allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).

### III.

### A.

Mr. Bundy's many claims fail for many reasons. The Senior Officials first argue that Counts One and Four—based on conduct during the standoff—are barred by the statute of limitations. Defs.' Mot. to Dismiss ("Defs.' Mem."), ECF No. 10 at 5. The Court agrees.

For both Section 1983 and *Bivens* actions, federal courts look to local law to determine the applicable statute of limitations. *See Jones v. Kirchner*, 835 F.3d 74, 80 (D.C. Cir. 2016). When plaintiffs bring these actions in this District, federal courts apply D.C.'s three-year statute of limitations for personal injury actions. *See id.* (applying D.C. statute of limitations in a Section 1983 action brought here); *Doe v. U.S. Dep't of Justice*, 753 F.2d 1092, 1114 (D.C. Cir. 1985) (applying D.C. statute of limitations in a *Bivens* action brought here).

The Senior Officials argue that Mr. Bundy had three years from April 2014 to bring his claims arising out of the alleged standoff. Defs.' Mem. at 8. But he did not file his Complaint until October 31, 2018. *See* Compl. In his one-paragraph response, Mr. Bundy does not challenge the applicability of the three-year statute of limitations. *See* Pl.'s Opp. to Mot. to

Dismiss ("Pl.'s Mem.") at 6–7. Rather, he argues that the limitations period should be tolled because he was incarcerated from about January 2016 until January 2018. Pl.'s Mem. at 6.

This issue is governed by D.C. Code § 12–302(a)(3), which provides that when a person is imprisoned "at the time the right of action accrues," then he "may bring action within the time limit after the disability is removed." But to toll the limitations period, a plaintiff's action must accrue *during* his imprisonment. D.C. Code § 12–302(a)(3). Mr. Bundy does not claim that he was imprisoned when his unlawful search and seizure and excessive force claims accrued.[2] So D.C. Code § 12–302(a)(3) does not save these claims.

Next, Mr. Bundy argues that the Court should apply the doctrine of equitable tolling. Pl.'s Mem. at 6. But generally, "District of Columbia law does not recognize an equitable tolling exception to the statute of limitations." *Johnson v. Marcheta Inv'rs Ltd. P'ship*, 711 A.2d 109, 112 (D.C. 1998). As the D.C. Court of Appeals has explained, "[r]ejection of the application of equitable tolling on a case-by-case basis . . . rests on the belief that where the legislature has provided no savings statute, courts would exceed their prescribed role by providing a remedy where the legislature has determined that none should lie." *Sayyad v. Fawzi*, 674 A.2d 905, 906 (D.C. 1996). Mr. Bundy does not explain why his claims can escape this general rule.

In any event, equitable tolling is available to a party "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Menominee Indian Tribe of Wis. v. United States*, 764 F.3d 51, 58 (D.C. Cir. 2014) (cleaned up). Mr. Bundy has not alleged—much less shown—that he has diligently pursued this case. Imprisonment alone is not the sort of "extraordinary

---

[2] Mr. Bundy also does not dispute that these claims accrued at the time of standoff. *See generally* Pl.'s Mem. at 6–7.

circumstance" that merits equitable tolling.  *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014) (requiring that a "litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action").

The Court is particularly reluctant to apply equitable tolling here.  Consider the negative-implication canon: the "expression of one thing implies the exclusion of others (*expressio unius est exclusio alterius*)."  Antonin Scalia & Bryan A. Gamer, *Reading Law: The Interpretation of Legal Texts* 107 (2012).  "If a sign at the entrance to a zoo says 'come see the elephant, lion, hippo, and giraffe,' and a temporary sign is added saying 'the giraffe is sick,' you would reasonably assume that the others are in good health."  *N.L.R.B. v. SW Gen., Inc.*, 137 S. Ct. 929, 940 (2017).  The District has provided—by statute—for tolling based on imprisonment in some instances.  But it decided not to toll the statute of limitations when a right of action accrues *before* a plaintiff is incarcerated.  Because the District has expressly provided for tolling when a plaintiff is imprisoned, the D.C. Council presumably intended that tolling based on imprisonment in other circumstances is unavailable.  The Court will not second-guess this legislative choice by providing Mr. Bundy a remedy here.

Thus, the Court will dismiss Counts One and Four[3] as untimely.

---

[3] In any event, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that *is plausible on its face.*'"  *Iqbal*, 556 U.S. at 678.  Count Four falls short of this test.  It is implausible to suggest that Directors Comey and Kornze—whom the Complaint alleges were in this District at the time—were involved in the minute-by-minute decisions made by agents in Nevada when confronted by armed Bundy supporters.  *Accord Argueta v. ICE*, 643 F.3d 60, 75–77 (3d Cir. 2011) (rejecting a claim that high-ranking federal officials directly participated in allegedly unlawful raids); *Farmer v. Mortisugu*, 163 F.3d 610, 616 (D.C. Cir. 1998) (rejecting an argument that would expose the Medical Director of Bureau of Prisons to liability "for all alleged mistakes in the individual diagnoses of every inmate in the BOP system, simply by virtue of an inmate's complaint").

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*,

**B.**

Mr. Bundy brings three claims under 42 U.S.C. § 1983: an excessive force claim, a retaliation claim, and a malicious prosecution claim. *See generally* Compl. at 16–20. The Senior Officials argue that these counts should be dismissed because Section 1983 is inapplicable to federal officers. Defs.' Mem. at 7.

"Section 1983 does not apply to federal officials acting under color of federal law." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1104 (D.C. Cir. 2005). But the issue here is federal versus state law, not federal versus state actor. "The traditional definition of acting under color of state law requires that the defendant in a Section 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988).

There is no claim that the Senior Officials possessed authority through the laws of Nevada or that they were somehow "clothed with the authority of" Nevada law despite their employment by the United States. Rather, the Complaint alleges only that these Senior Officials were acting under the color of *federal* law. At all times, they were "clothed with the authority" of federal, not state, law. *West*, 487 U.S. at 49.

Mr. Bundy accuses the Senior Officials of directing state officers to arrest him and federal prosecutors to prosecute him for improper reasons. *See generally* Compl. at 18–20. But these allegations are based only on a *federal* prosecution. Mr. Bundy does not explain how the

---

556 U.S. at 679. Perhaps it is plausible that the agents who made the decisions and took the actions that Mr. Bundy complains of did so at the direction of their *immediate* superiors. But it is implausible that the Directors—who supervised large federal agencies and who were hundreds of miles away at the time of the events—were somehow personally involved in real-time decisions of individual officers, such as particular uses of force. The Complaint's repeated allegations that the Directors were in this District at the time may have staved off a motion to transfer, but they invited an implausibility claim as to these Counts.

6

Senior Officials could act under the color of state law in bringing a federal prosecution. In fact, the D.C. Circuit has made clear that Section 1983 "does not apply to officials acting under color of federal law, *such as a federal prosecutor acting within the scope of her duties.*" *Jones v. Horne*, 634 F.3d 588, 594 n.2 (D.C. Cir. 2011) (emphasis added).

In response, Mr. Bundy claims that he is suing the Senior Officials as co-conspirators with state officers under Section 1983. Pl.'s Mem. at 4–5. He argues that because the Complaint avers that the Senior Officials "acting in concert, directed and ordered local Nevada state officials," he has alleged that the Senior Officials themselves were "acting under the color of state law." *Id.* at 4. But he has it exactly backwards. In his telling, the Senior Officials used their federal authority to order state officers to execute their plans. So perhaps one could argue that the *state* officers acted under the color of *federal* law during the standoff. But nowhere does he allege that the Senior Officials had or used any authority granted by Nevada law. Nor would it be plausible to so allege.

A Section 1983 action requires that a defendant exercise power "made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49. That is not the allegation here. So the Court will dismiss Counts Five and Six, and this reasoning is an alternative ground for dismissing Count Four as well.

## C.

The Senior Officials urge the Court to dismiss all claims against Attorneys General Sessions, Lynch, and Holder based on absolute prosecutorial immunity. Defs.' Mem. at 9–11. In response, Mr. Bundy argues that absolute immunity should not apply because the Complaint alleges that the Attorneys General prosecuted him without probable cause and knowingly relied

on false allegations. Pl.'s Mem. at 7.[4] Mr. Bundy does not argue that he is challenging administrative or investigative conduct by the Attorneys General. *Cf. Burns v. Reed*, 500 U.S. 478, 494 (1991) (explaining that absolute immunity does not extend to "every litigation-inducing conduct"). He challenges only the decision to prosecute.

Federal prosecutors enjoy absolute immunity for "initiating a prosecution" and "presenting the [government's] case." *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976). This immunity extends to activities "intimately associated with the judicial phase of the criminal process." *Id.* at 430–31; *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 270–71 (1993) (discussing the line that divides activities of a prosecutor that are entitled to absolute immunity from those entitled to qualified immunity).

The Complaint alleges that "[t]he prosecution against [Mr. Bundy] for allegations known to be false were malicious, shocking, and objectively unreasonable in light of the circumstances." Compl. at 20. According to Mr. Bundy, the Attorneys General prosecuted him "in retaliation for his lawful and constitutional exercise of his First Amendment and other rights." Pl.'s Mem. at 8.

Prosecutorial immunity insulates the Attorneys General from liability for the "unquestionably advocatory decision" to prosecute Mr. Bundy. *Moore v. Valder*, 65 F.3d 189, 194 (D.C. Cir. 1995). In *Imbler*, the plaintiff alleged that the prosecutor knowingly used false testimony and suppressed material exculpatory evidence at trial. 424 U.S. at 413. Even so, the Supreme Court upheld the lower courts' rulings that the prosecutor was immune from potential liability for the alleged misconduct. *Id.* at 427. Even taking all of Mr. Bundy's allegations of misconduct as true, absolute immunity bars his claims against the Attorneys General.

---

[4] The Senior Officials argue that absolute prosecutorial immunity can be asserted in cases brought under *Bivens*, Section 1983, and RFRA. *See* Defs.' Mem. at 11. Mr. Bundy does not challenge this assertion. *See generally* Pl.'s Mem. at 6–8.

For this reason, the Court will dismiss Counts Two and Three against Attorneys General Sessions, Lynch, and Holder. And this reasoning is an alternative ground for dismissing Counts Five and Six against these defendants as well.[5]

**D.**

The Senior Officials also insist that all claims against Directors Comey and Kornze should be dismissed because the Complaint does not sufficiently allege their personal participation. Defs.' Mem. at 12. The Supreme Court's seminal decision *Ashcroft v. Iqbal* decides this question.

In *Iqbal*, a Pakistani Muslim sued high-level federal officials, including the former Attorney General and Director of the FBI, alleging that he had been deprived of various constitutional rights while in post-9/11 pre-trial detention. 556 U.S. at 666. The Court dismissed the complaint, holding that "[b]ecause vicarious liability is inapplicable to *Bivens* and Section 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676. The Court emphasized that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Id.* at 677. So too here.

---

[5] The Complaint alleges that Attorney General Sessions "condoned" the decision to prosecute by appealing the dismissal of the criminal case. Compl. ¶ 11. But as discussed above, General Sessions enjoys absolute prosecutorial immunity for such an "unquestionably advocatory" decision. *See Moore*, 65 F.3d at 194.

As for the rest of the allegations, the Court finds that Mr. Bundy's claims against Attorneys General Sessions and Holder are implausible because they were even not in office when federal authorities indicted Mr. Bundy. Common sense requires the Court to reject allegations that these officials, who did not work for the Department of Justice at the time, were somehow personally involved in the decision to bring federal charges, in retaliation or otherwise. *Cf. Iqbal*, 556 U.S. at 679 (determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Mr. Bundy's Complaint does not allege that Directors Comey and Kornze participated in the decision to bring a criminal indictment against Mr. Bundy. In fact, the Complaint alleges that General Lynch "personally caused and instituted the indictment." Compl. at 11. And in his briefing, Mr. Bundy offers no argument that Directors Comey and Kornze were personally involved in the decision to prosecute Mr. Bundy. *See generally* Pl.'s Mem. at 8–9.

Mr. Bundy also fails to allege that they personally participated in the unlawful conduct during the standoff. Mr. Bundy's Complaint has no factual allegations about the Directors' involvement in the actions leading to this lawsuit, such as the use of force or the seizure of his cattle. In his response to the Senior Officials' Motion to Dismiss, Mr. Bundy points only to three paragraphs in the Complaint:

> 15. Under the guise of collecting grazing fees, an alleged and unverified debt, the federal government – BLM and FBI – upon orders from Defendants Comey, Kornze and Holder from Washington D.C. in this district, invaded the Bundy Ranch in April of 2014 and violently assaulted and extorted [Mr. Bundy] and his family members and killed his family's cattle.
>
> 25. Defendant Kornze directly and personally used his agency, from Washington D.C. in this district, to violate the constitutional and other rights of [Mr. Bundy].
>
> 27. Defendant Comey directly, willfully, and personally used his agency, from Washington D.C. in this district, to violate the constitutional and other rights of [Mr. Bundy].

Conclusory allegations such as these are insufficient to state a claim against the Directors. *See Iqbal*, 556 U.S. at 686 ("[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."). For instance, the *Iqbal* Court rejected a pleading that a high-level official "'knew of, condoned, and willfully and maliciously agreed to subject him' to harsh conditions of confinement 'as a matter of policy, solely on

10

account of his religion, race, and/or national origin and for no legitimate penological interest'" as too conclusory. *Iqbal*, 556 U.S. at 680.

Although the Directors allegedly "directed" other officers, who are not before this Court, no factual assertions support this allegation, and conclusory allegations are insufficient on their own to defeat a motion to dismiss. *See Chavez v. United States*, 683 F.3d 1102, 1110 (9th Cir. 2012) (discounting the "wholly conclusory allegation that the supervisory defendants 'personally reviewed and, thus, knowingly ordered, directed, sanctioned or permitted'" traffic stops that allegedly violated the Fourth Amendment); *cf. Morris v. U.S. Sentencing Comm'n*, 62 F. Supp. 3d 67, 75 (D.D.C. 2014), *aff'd*, 696 F. App'x 515 (D.C. Cir. 2017) ("Consequently, high-level officials . . . typically are not subject to *Bivens* liability since they do not routinely participate personally in decisions about a particular individual at a particular location.").

As to Paragraphs 25 and 27, the Complaint offers no factual support to support the bald assertion that Directors Kornze and Comey "used their agenc[ies]" to violate Mr. Bundy's constitutional rights. Just as it was not enough for the *Iqbal* plaintiff to allege that officials "agreed to subject" him to unconstitutional confinement, *see* 556 U.S. at 680, it is not enough here for Mr. Bundy to allege that an official "used his agency . . . to violate" his constitutional rights. Compl. at 6. These are "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (explaining that Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" (cleaned up)).

In sum, Mr. Bundy's conclusory allegations that Directors Comey and Kornze engaged in some sort of conspiracy, "directing" other officers to violate Mr. Bundy's constitutional rights are unsupported by the facts alleged in the Complaint. *See, e.g.*, *Gorbey v. United States*, 309 F.

App'x 425 (D.C. Cir. 2009) (per curiam) (affirming dismissal of complaint containing "only conclusory and unsubstantiated allegations" of unlawful conduct). Indeed, the Senior Officials are correct that if such allegations sufficed, high-ranking federal officials would find themselves in litigation every day around the country.

Because the Complaint fails to plausibly allege that Directors Comey or Kornze personally participated in the alleged misconduct, the Court will dismiss Counts Two and Three against them. This reasoning serves as alternative grounds for also dismissing Counts One, Four, Five, and Six against them.

## IV.

For the all these reasons, the Defendants' Motion to Dismiss will be granted, and the Plaintiff's Complaint will be dismissed. A separate order will issue.

Dated: June 10, 2019                                        TREVOR N. McFADDEN, U.S.D.J.